Argued and submitted June 2, reversed and remanded
to the Workers' Compensation Board September 10, 1980

In the Matter of the Compensation of
The Beneficiaries of

ROGERS,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(WCB 76-3717, CA 14541, SC 26745)

616 P2d 485

Martin Sharp, Gresham, argued the cause for peti-
tioner. With him on the brief and petition was Larson
and Sharp, Gresham.

Thomas E. McDermott, Portland, argued the cause for respondent. With him on the briefs were Lindsay, Nahstoll, Hart, Neil & Weigler, Portland, and Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Peterson, and Tanzer, Justices.

TANZER, J.

### TANZER, J.

We accepted review of this workers' compensation case to examine the question of liability of the employer for a worker's death resulting from activities which occur after work hours but while the worker is away from home as a requirement of his employment.

## I. THE OPINION ON REVIEW

The Court of Appeals reversed an award to the worker's beneficiary. Because we review for errors of law and are bound by the facts as found by the Court of Appeals, *Sahnow v. Firemen's Fund Ins. Co.,* 260 Or 564, 491 P2d 997 (1971), it is necessary to determine the findings made by the Court of Appeals. Its opinion consisted solely of a citation to *Hackney v. Tillamook Growers,* 39 Or App 655, 593 P2d 1195 (1979). The Court of Appeals has published an explanation of the reasons by which it decides cases either with or without opinion.[1] Consistent with that policy, it deems it to be both necessary and desirable to decide cases involving only factual issues without opinion, *Bowman v.*

---

[1] "DECISIONS WITHOUT OPINION

"A case may be decided without opinion * * * by action taken at any post-submission departmental or full conference * * *. Cases are not decided without opinion unless all judges in the decisional majority * * * agree on the result and that an opinion would have no precedential value. Most commonly that occurs in cases involving direct application of established principles of law or which turn solely on their facts. * * *

"* * * * *

"SIGNED OPINIONS

"The court decides cases by signed opinion only where there is reason to do so. Generally, such reason exists when:

"1. an opinion would have precedential value because the decision involves a hitherto unstated or undecided issue of law; or

"2. an opinion would have precedential value because the decision requires an application of established principles of law to new, novel or exceptionally illustrative facts; or

"3. a reversal or modification may have instructional value; or

"4. issues of unusual public concern are presented.

"* * * * *."

Internal Practices, Court of Appeals, pp 13-15 (January 2, 1979).

*Oregon Transfer Company,* 33 Or App 241, 576 P2d 27 (1978). The Court of Appeals has also explained why, as in this case, it issues opinions with a bare citation:

"PER CURIAM OPINIONS

"When the judges agree on the analysis and the result, that the law is clear and that an opinion would have no precedential value, but it would be desirable to identify the ground of decision, they may decide by per curiam opinion. Such an opinion may be a bare citation of a statute, case or other authority. * * *." Internal Practices, Court of Appeals, p 14 (1979).

Following that practice in this case, the Court of Appeals identified the basis of its decision by citation of the *Hackney* opinion without reference to any other ground of decision. Because *Hackney* involved one issue of law, simple citation of that case informs us, although cryptically, that the reason for reversal was disagreement with the Workers' Compensation Board on the law, not on the facts. Therefore, we take the opinion to mean that the Court of Appeals has made the same findings as the Workers' Compensation Board, *cf. Gettman v. SAIF,* 289 Or 609, 616 P2d 473 (1980), and we look to the administrative orders for express findings.

The Workers' Compensation Board affirmed the decision of the referee and adopted his opinion as its own. The referee's opinion suffers from imprecision in its findings and conclusions which make the review function difficult to perform. The opinion begins with express findings. The referee found that the decedent died in the early hours of the morning from an acute myocardial infarction. His employer was engaged in projects which modify riverbeds or channels. The decedent had operated equipment for the employer for a number of years and was at the time of his death on his second assignment for them as a project superintendent. Through the decedent's arrangements, the crew of 28 or 29 men stayed at a certain motel in Umatilla and they generally ate their meals at a certain restaurant nearby. Some of the machinery on

the project was worked on a 12-hour shift, two-shifts-per-day basis and some of the equipment was worked on a three-shift-per-day basis. Although the work area could be seen from the decedent's motel room, it was a mile-and-a-half drive to the work area. The decedent generally was on hand for shift changes.

At this point, the opinion discontinues setting out findings and instead states that certain evidence was given.[2] The difficulty on review is that a recital of evidence is not the same as a finding of fact. We cannot determine with certainty from the recitals whether the evidence recited by the factfinder was found as fact. *Marbet v. PGE,* 277 Or 447 at 469, 561 P2d 154 (1977). *Cf. Graham v. OLCC,* 20 Or App 97, 530 P2d 858 (1975).

The opinion recites the existence of evidence that the conditions of decedent's employment were unusually stressful, that decedent's non-employment life was not stressful, and that general stress was a material contributing factor to decedent's death. The opinion does not state whether this evidence is accepted.

The opinion then notes claimant's alternative theory for recovery: that the events of the evening preceding the fatal infarct were a material contributing cause of death. The opinion accepts this theory and predicates the award on it. We take the following facts from a melange of additional express findings and recitals of that evidence which was necessarily

---

[2] The sentences begin with such phrases as:

"There was a lot of time taken up with establishing * * *."

"Some of the workers on the job testified * * *."

"There was also testimony * * *."

"There is some medical evidence to support this theory."

"Dr. Kloster testified * * *."

"Dr. Kloster even testified * * *."

"SAIF did not refute this expert medical evidence."

believed in order to reach the conclusions. The decedent was on 24 hour call. At 6 or 7 o'clock on the evening of decedent's death, the project was closed down because of unfavorable weather. Because the crew was away from home and families, they tended to be together during off hours. That evening, they were at the bar of the restaurant at which they usually congregated. The decedent ate and drank in undetermined quantities. He was called away from the bar in order to arrange for some men to move one of the rigs on the river. Upon his return, he pulled a chair out from under a worker named Fox. This led to some pushing and shoving between him and Fox. Shortly thereafter, decedent spoke with Fox at the bar regarding Fox's difficulties in working harmoniously with the crew. Consistent with his responsibility as supervisor, decedent's comments to Fox were in the nature of counseling rather than off-hand observations or complaints. Later in the evening, a fight occurred between Fox and another worker. The decedent helped break it up. Twenty or thirty minutes later, the decedent developed "chest symptomatology" and returned to his room. His pain increased, he called for help, and within an hour he was taken to the hospital. Two or three hours later he died from a myocardial infarction. Based upon the opinion of decedent's physician, it was expressly found that the incidents of the evening preceding death were a substantial, material contributing cause of death.

The issue, then, is whether the events of the evening were sufficiently work-related that the death was compensable. By citation of the *Hackney* case, the Court of Appeals indicated its conclusion, under the rule of that case, that it was not compensable. In *Hackney,* the Court of Appeals reaffirmed their adoption of the following proposition which now appears in 1A Larson, Workmen's Compensation Law 5-200, § 25.00 (1980).

"Employees whose work entails travel away from the employer's premises are held in a majority of

jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. * * *."

In *Hackney,* claimant and another truck driver, on a layover, by arm wrestling, broke claimant's arm. The majority of the court held, apparently as a matter of law, that the arm wrestling during the layover time "had no business benefit to his employer" and therefore did not occur while claimant was acting in the "course and scope" of his employment. 39 Or App at 659. In this manner, the Court of Appeals held that the events of the evening which caused decedent's death were not in the course of his employment.

## II.  COMPENSABILITY

ORS 656.005(8)(a) contains the usual American-British formulation of the relationship between employment and disability upon which compensability is founded:

"A 'compensable injury' is an accidental injury * * * arising out of and in the course of employment * * *."

Early cases of this court treat the two elements, "arising out of" and "in the course of" employment, as distinct tests, each of which must be met for compensability to exist:

"* * * Before a workman can be entitled to compensation under the act, the injury must both arise out of and also be received in the course of the employment. The words are used conjunctively and, therefore, both elements must coexist for neither alone is sufficient. The words 'out of', as used in the statute, point to the origin or cause of the accident. The words 'in the course of' point to the time, place and circumstances under which the accident takes place. The former are descriptive of the character or quality of the accident, while the latter relate to the circumstances under which an accident of that character or quality takes place. Before an accident can be said to arise out of the employment, the injury must be directly traceable to the nature of the work

or to some risk to which the emloyer's business exposes the employee. The risk must be reasonably incidental to the employment * * *." (Citations omitted.) *Larsen v. State Ind. Acc. Com.,* 135 Or 137, 139-140, 295 P 195 (1931).

In practice, the distinction is of dubious significance because the "in the course of" prong of the test is seldom decisive. An injury not incurred in the course of employment does not arise out of it, as those terms have been construed over the years. If the injury is in the course of employment, the case is ultimately decided on the basis of the "arising out of" prong, i.e., causation. A recent case illustrates the point. In *Clark v. U. S. Plywood,* 288 Or 255, 605 P2d 265 (1980), a worker died on premises during the lunch hour as a result of retrieving his lunch from some dangerous equipment. We concluded that the worker was acting in the course of his employment, but that determination was not dispositive. We remanded for a finding on the dispositive issue of the "other prerequisite of recovery": whether the conduct was approved by the employer and hence arose out of the employment. 288 Or at 267-268.

Conversely, in the *Hackney* case, the injury was held not to be incurred in the course of employment because the claimant, although away from home due to employment, was engaged in "a distinct departure on a personal errand," i.e., the injury arose out of something other than the employment. The injury was not in the course of employment for the sole reason that it arose from a personal rather than employment activity. The *Hackney* case and the quote from Professor Larson upon which it relies demonstrate that close questions under the "in the course of" prong are answered by applying the "arising out of" prong of the test. Boiled down, the two tests are ultimately one test; "in the course of" is merely one aspect of "arising out of."

Professor Larson suggests that the distinction, although rooted in history, is not useful con-

ceptually. He argues that the fundamental inquiry is whether the injury is work-related and that the two statutory phrases, although helpful in making that determination, are not to be mechanically applied:

> "For the most part, this observation [that the two tests are distinct] does no harm; but it should never be forgotten that the basic concept of compensation coverage is unitary, not dual, and is best expressed in the term 'work-connection.'" 1 Larson, Workmen's Compensation Law 3-2-3-3, § 6.10 (1980).

This court has not had occasion to examine the validity of the distinction in recent years, but the Court of Appeals has. The difference of approach between *Larsen* and Larson is reflected in *Otto v. Moak Chevrolet,* 36 Or App 149, 583 P2d 594 (1978) which involved the so-called "personal comfort" doctrine. The claimant hurt her back while getting up from a company toilet during a work break. The majority, properly following the dictate of this court in *Larsen v. State Ind. Acc. Com.,* applied the test in two distinct steps. It concluded that the injury was not compensable because it occurred in the course of employment, but did not arise out of it. Judge Johnson specially concurred but noted that the trend of the law is to treat the two phrases as elements of one test rather than as distinct tests:

> "I agree with the majority that the 'arising out of' employment component of the test for compensability is concerned primarily with causation, whereas the 'in the course of' component refers to time, place and circumstances. *Larsen v. State Ind. Acc. Com.,* 135 Or 137, 139-40, 295 P 195 (1931). However, contrary to the majority's approach, the trend of authority both in Oregon and elsewhere is not to treat these two tests independently but as merely parts of a single test that the injury must be work related. See 1 A. Larson, Workmen's Compensation Law, § 29.10 (1978). * * *." 36 Or App at 154-155.

The essence of the Workers' Compensation Act is that financial consequences flow from the existence of the employment relationship itself. Liability

and compensability are predicated on employment. Fifty years ago, in *Lamm v. Silver Falls Tbr. Co.,* 133 Or 468, 277 P 91, 286 P 527, 291 P 375 (1930), this court held that an injury sustained by a lumber camp worker while returning to work on the company-owned train was compensable. In doing so, the court adopted as its own a statement of the basic concept of the Workers' Compensation Act which is consistent with and would be advanced by an inquiry into the nature and extent of the connection of the injury and the employment:

> " 'Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured. * * * No exact formula can be laid down which will automatically solve every case. * * *.' " 133 Or at 495-496.

Although the relationship may be measured in different factual situations by the application of one test or another, the ultimate inquiry is the same: is the relationship between the injury and the employment sufficient that the injury should be compensable?

Any question of sufficiency must be answered in light of the policy for which the determination is to be made. Accordingly, in another case, the Court of Appeals looked to the two statutory phrases as analytical tools by which to determine whether there is "sufficient connection * * * with the employment to justify a holding that [the injury] arose out of the employment." *Allen v. SAIF,* 29 Or App 631, 635, 564 P2d 1086 (1977). In taking a more unitary "work-connection" approach, the court made this observation, in which we concur:

"The statutory phrase 'arising out of and in the course of employment' must be applied in each case so as to best effectuate the socio-economic purpose of the Worker's Compensation Act: the financial protection of the worker and his/her family from poverty due to injury incurred in production, regardless of fault, as an inherent cost of the product to the consumer. 1 Larson, *Workmen's Compensation Law* § 2.20. Various concepts have arisen from attempts to rationalize that purpose, e.g., the going and coming rule, special errands, lunch hour cases, dual purpose trips, impedimenta of employment, horseplay, etc. Each is helpful for conceptualization and indexing, but there is no formula for decision. *Etchison v. SAIF,* 8 Or App 395, 398, 494 P2d 455 (1972). Rather, in each case, every pertinent factor must be considered as a part of the whole. It is the basic purpose of the Act which gives weight to particular facts and direction to the analysis of whether an injury arises out of and in the course of employment." 29 Or App at 633-634.

■     In adopting a unitary "work-connection" approach in place of the customary mechanistic two-stage method of analysis, it is not our intention to substantially change fundamental Workers' Compensation law.[3] If the injury has sufficient work relationship, then it arises out of and in the course of employment and the statute is satisfied. Existing law regarding proximity, causation, risk, economic benefit, and all other concepts which are useful in determining work relationship remain applicable. Employment of a

---

[3] Neither does Larson advocate fundamental change in the law. Rather, he is "almost tempted to formulate a sort of quantum theory of work-connection" which describes the results of judicial decisions, even if it would not serve as a theoretical basis for them. 1A Larson, *Workmen's Compensation Law* § 29.10 at 5-355. His black letter statement is:

"In practice, the 'course of employment' and 'arising out of employment' tests are not, and should not be, applied entirely independently; they are both parts of a single test of work-connection, and therefore deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other." *Id.,* § 29.00 at 5-354.

He gives an example of a weak "course," strong "arising" situation, the going and coming cases; as an example of the reverse, he gives the positional risk (e.g., stray bullet) cases. *Id.,* § 29.10 at 5-356-5-357.

unitary test, more closely aligned with the purpose of the Act, will facilitate a simpler, cleaner, more direct inquiry into compensability.

■       Applying that approach to this case, it is unnecessary to determine whether decedent's evening activities could be characterized as horseplay of a nature which obviates the conclusion that he was acting in the course of employment by virtue of his travel status. Rather, accepting the findings implicit in the Court of Appeals' decision, we conclude that the conditions and events which caused decedent's death were causally related to his work. He was under stress; he was working extended hours; being on call, he was called away from his evening's activities to arrange for personnel for the project; the recreational and social choices open to him were limited due to his employment travel status; although there was negligible connection between his pulling Fox's chair and the dredging project, his difficulties with Fox flowed generally from Fox's inability to get along with his fellow workers and, when he counseled Fox between the two altercations, he was acting within his responsibility as supervisor. Because the events of the evening were found to be a material contributing cause of decedent's death and because those events were work-related, we conclude that his death was compensable. Accordingly, we reinstate the order of the Workers' Compensation Board.

Reversed.