Argued and submitted March 19, affirmed July 21,
reconsideration denied August 26,
petition for review denied September 28, 1982 (293 Or 634)

In the Matter of the Compensation of
Walter R. Richmond, Claimant.

RICHMOND,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(No. 80-01520, CA A22718)

648 P2d 370

David Filer, Eugene, argued the cause for petitioner. On the brief was Gary K. Jensen, Eugene.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden, and Young, Judges.

YOUNG, J.

## YOUNG, J.

The issue in this workers' compensation case is compensability. The Workers' Compensation Board (Board) affirmed the opinion and order of the referee, which denied the claim. We review *de novo* and affirm.

Claimant is a police officer employed by the City of Lebanon. He injured his knee while playing in a benefit basketball game between the Police and Fire Departments of the city. Knee surgery was required, which resulted in time loss.

The facts are not disputed. The basketball game took place at the Lebanon Union High School gymnasium for the benefit of the Wigwam Wisemen, an athletic booster club at the high school. This was the third annual game between the departments. The games were organized by members of the police and fire departments, partly during on-duty time. Each year the game participants selected an organization to receive the ticket sales proceeds. Athletic jerseys were purchased by individual players, although some were borrowed from the high school. Game tickets were provided by a volunteer organization of the fire department. A marksmanship trophy, which belonged to the police department, was modified without charge by a local business and presented to the winning team. Local businesses were solicited and donated half-time prizes. Ticket sales and publicity were supervised by the booster club. Copies of the game program were made on a city copy machine. The game was video-taped with city equipment by fire department employes. A fire department ambulance and another vehicle were present at the game, as were uniformed police officers and firefighters. The players practiced on their off-duty time, and each team used department volunteers. The city neither orally nor in writing approved or disapproved the game.

Claimant argues that his knee injury is compensable, because he and the other participants would not have played in the basketball game but for their employment as police officers and firemen. SAIF maintains that claimant was not in the course and scope of his employment within

the meaning of ORS 656.005(8)(a)[1] when he was participating in the game.

■ The issue of "work-connection" was addressed in *Rogers v. SAIF,* 289 Or 633, 616 P2d 485 (1980), where the court adopted a "unitary work-connection" analysis to determine compensability. *Rogers* described the ultimate inquiry:

> "[I]s the relationship between the injury and the employment sufficient that the injury should be compensable?" 289 Or at 642.

In making that determination, we find Professor Larson's analysis helpful:

> "Recreational or social activities are within the course of employment when
>
> "(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
>
> "(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
>
> "(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life." 1A Larson, Workmen's Compensation Law, 5-71, § 22.200 (1979).

Larson emphasizes that the indicia of time and place in the first test "are of unusual potency in identifying an activity with employment." 1A Larson at 5-106. Here, the game took place at the high school, not on the employer's premises.[2] Claimant contends that, as a police officer, he is on duty 24 hours a day and that, even though he was technically off-duty while participating in the game, the activity was within his duty hours. That argument is not persuasive. If carried to its logical conclusion, any off-duty

---

[1] ORS 656.005(8)(a) defines a "compensable injury" as an "accidental injury * * * arising out of and in the course of employment * * *."

[2] Although the game took place within the geographical boundaries of the city, the gymnasium at Lebanon Union High School is not the employer's premises, in the sense that the employer could direct, control, allow or prohibit activities as it could on its own premises.

activity by a police officer would have the indicia of compensability, a result clearly not contemplated by the statutory scheme.

■ Claimant also argues that some of the preparation for the game was accomplished during on-duty time and that therefore the activity was within the time and place of employment. However, there was no persuasive evidence that the chiefs of the respective departments had knowledge of or gave their permission to those on-duty activities. That is also the case with respect to the use of the city's copy machine and video equipment.

■ Larson's next test is the extent to which the employer requires participation in the activity, thereby making it part of the services of the employe. The record does not reflect a requirement by the city or its department chiefs that employes participate in the game. The evidence was that the chiefs of the departments acquiesced in the games and participated as players. They neither gave nor required permission to play. The game was organized on the initiative of the employes, and the chiefs were merely informed of their activities. Sponsorship and promotion were provided by the booster club. The only evidence of the city's participation was the donation of a police department trophy, which was transformed gratuitously into a basketball trophy. At most, the evidence amounts to tacit approval by the police and fire departments that the employes participate in the game, but it falls short of the supervision or complusion necessary to bring the recreational activity within the course of employment.

■ The final test articulated by Larson concerns the direct benefit the employer derives from the activity, which must be beyond an improvement in employe health and morale. *See Haugen v. SAIF,* 37 Or App 601, 588 P2d 77 (1978). Claimant argues that the city was benefited by the game, because it helped contribute to a positive image of the police department within the community. While acknowledging that public relations may be improved by worthwhile charitable activities such as the one here, we do not find that the benefit to the city was sufficiently substantial or of such a direct nature to establish the necessary beneficial relationship between the recreational activity and the employment.

Claimant has not met his burden of proving a sufficient work connection between his injury and his employment.

Affirmed.