Argued and submitted September 18, affirmed December 26, 1985

In the Matter of the Compensation of
Robert M. Rose, Claimant.
ROSE,
*Petitioner,*

*v.*

ARGONAUT INSURANCE COMPANIES et al,
*Respondents.*

(WCB No. 83-12041; CA A34412)

711 P2d 218

James L. Edmunson, Eugene, argued the cause for petitioner. With him on the brief were Robert J. Guarrasi, and Malagon & Associates, Eugene.

Kevin L. Mannix, Portland, argued the cause for respondents. With him on the brief was Lindsay, Hart, Neil & Weigler, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Claimant seeks review of an order of the Workers' Compensation Board which affirmed the referee's decision that his injury was not work related.

Claimant played slow-pitch softball for the Guaranty Eggs, a team organized by the employes of Guaranty Chevrolet in Junction City. He broke and dislocated his ankle while sliding into first base during the first game of the season. He seeks compensation for his injury under the theory that it occurred during a recreational activity sanctioned by and indirectly beneficial to employer. The Board, affirming the referee, held that employer's contribution to the team and the benefits it derived were not sufficient to justify compensation. We agree and affirm.

Claimant worked for employer as a car salesman and was not hired for his ability to play softball. He worked on straight commission, with a guaranteed minimum hourly wage. The softball team was organized and managed by Billy Steele, one of employer's leading salesmen, but not a manager or supervisor. The team was a part of a city league and played on a schedule established by the league. Steele, a sports enthusiast, intended to pay as much of the cost of the team as necessary, including league entrance fees and uniform and equipment costs. He approached Herb Nill, the owner of Guaranty, and Nill agreed to contribute personally $100 towards the team. He made his check payable to Steele. Nill's name was on the team roster, but he never played or appeared at a game. Steele selected the team uniform, which had the name "Guaranty" and the company logo on the jersey.

Claimant was asked by Steele to join the team and he did so voluntarily because, although he is not a good softball player, he thought it would be good for his job. Employes were not required to play. Those who did paid almost all of the costs of uniforms, equipment and fees. Games and practices were held at local parks and, for the most part, after work hours. Employes were frequently allowed to leave early for games, without pay. Now and then, during work hours, they would play catch on employer's premises. Games were occasionally discussed at sales meetings. Employer had a general policy of not sponsoring recreational teams.

In deciding this case, we must determine whether the relationship between claimant's injury and his employment is sufficient to justify compensation. *Rogers v. SAIF,* 289 Or 633, 642, 616 P2d 485 (1980). Only one Oregon case has addressed a similar set of facts. In *Richmond v. SAIF,* 58 Or App 354, 648 P2d 370 (1982), the claimant injured his knee while playing softball on a police department team. In reaching our decision that the injury was not compensable, we referred to 1A Larson, Workmen's Compensation Law, 5-71, § 22.200 (1979).[1] We again turn to Larson for guidance in deciding this case, this time referring to the most recent edition, 1A Larson, Workmen's Compensation Law, 5-131 to 5-158, §§ 22.24 to 22.35 (1985). There, Larson discusses the five determinative variables in a case such as this: the location of the recreational activity, on or off the employer's premises; the time of the activity, during, before or after work hours; the employer's initiative in organizing the team; the employer's contribution to the team; the quality and type of benefit derived by the employer. Considering each of these, we conclude that the evidence weighs decisively against claimant.

Claimant was injured at a game which was played after work hours and off employer's premises. Employer did not organize, manage or sponsor the team and had no control over it. No effort was made by employer to advertise the games. Employes were encouraged but not required to play. The only contribution made by employer was a personal one of $100 by the owner. There is no evidence of the motivation for that contribution. Employer received only a minor and incidental benefit in the form of indirect advertisement received through the team jerseys.

Claimant makes much of the fact that employes were

---

[1] 1A Larson, Workmen's Compensation Law, 5-71, § 22.200 (1979), states:

"Recreational or social activities are within the course of employment when

"(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

"(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

"(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreational and social life."

encouraged to act professionally and to sell cars at the games. They brought demonstration models to the games. Claimant concedes that employer encouraged the same type of activity for employes at all times, whether employes were on or off the job.

We conclude that claimant's injury was not work related. The fact that employer sanctioned or even encouraged employes to play on the team and may have derived an incidental benefit in the form of advertisement is not sufficient to establish a work connection.

Affirmed.