Submitted on remand from the Oregon Supreme Court September 16, reversed and
remanded with instructions December 17, 1986

In the Matter of the Compensation of
Leslie Colvin, Claimant.

COLVIN,
*Petitioner,*

*v.*

INDUSTRIAL INDEMNITY,
*Respondent.*

(WCB 81-03061; CA A31519)

730 P2d 585

74

James L. Edmunson, Eugene, appeared for petitioner. With him was Malagon & Associates, Eugene.

John E. Snarskis, Portland, appeared for respondent.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Warden, Judge.

WARDEN, J.

## WARDEN, J.

This workers' compensation case comes to us on remand from the Oregon Supreme Court, *Colvin v. Industrial Indemnity,* 301 Or 743, 725 P2d 356 (1986), which held that we had misinterpreted ORS 656.265(4)(a)[1] and, therefore, reversed our decision. An order of the Workers' Compensation Board had reversed the referee and concluded that the claim was untimely, because claimant had not given notice to her employer pursuant to ORS 656.265. The Board had also held that, even if the claim were not time-barred, the injury was not compensable, because it was not work-related. We affirmed the Board order, holding that the claim was time-barred, because the employer had no knowledge of the injury within the meaning of ORS 656.265(4)(a).[2] *Colvin v. Industrial Indemnity,* 75 Or App 87, 91, 705 P2d 231 (1985). We concluded that the relevant question in determining whether the employer had knowledge of claimant's injury within the meaning of that statute was

> "whether the individuals who were aware of the injury also had the apparent authority or a duty to do something about it. * * * Whether [those individuals were or were] not claimant's supervisor[s] [is] irrelevant." 75 Or App at 91.

On remand, the Supreme Court directs that, if we find that the individuals who were aware of the injury

> "had supervisory authority over claimant, knowledge of claimant's injury will be imputed to the employer. If no supervisory authority is found, ORS 656.265(4)(a) requires a determination of whether respondent/insurer was prejudiced by the late notice [of the injury]. Finally, even if the employer had knowledge or respondent was not prejudiced, the Court of Appeals must determine whether claimant's injury is one 'arising out of and in the course of employment.' ORS 656.005(8)(a)." 301 Or at 749.

We first address the issue of whether the persons

---

[1] ORS 656.265(4)(a) provides:

"Failure to give notice as required by this section bars a claim under ORS 656.001 to 656.794 unless:

"(a) The employer had knowledge of the injury or death, or the insurer or self-insured employer has not been prejudiced by failure to receive notice * * *."

[2] We did not reach the question of whether claimant's injury was work-related.

claimant told of her injury had supervisory authority over her. Claimant was a paralegal in a large law firm. Her injury occurred at a firm picnic. She told Kreft, the firm's senior paralegal, about her injury shortly after it occurred. The next week she mentioned to Lilly, an associate attorney of the firm, that she had fallen and injured her back at the picnic. After reviewing the record, we find that both Kreft and Lilly had supervisory authority over claimant. Both testified that the firm's organization was loosely structured at the time of claimant's injury. Kreft's uncontroverted testimony was that she was the senior paralegal, that she had interviewed claimant before the firm had hired her and that she always represented the paralegals when speaking with the firm's partners concerning issues such as salaries and the need for more secretaries. Lilly, who testified for the insurer, said that he worked at least weekly, and often daily, with claimant on cases assigned to him. Both Kreft and Lilly therefore exercised a degree of supervisory authority over claimant. Claimant's failure to give notice of the injury pursuant to ORS 656.265 therefore does not bar her claim, because her employer had knowledge of the injury within the meaning of ORS 656.265(4)(a).

■ Employer's knowledge, however, is not determinative, by itself, of the issue of compensability. To be compensable, the injury must be one "arising out of and in the course of employment." ORS 656.005(8)(a). Some discussion of the facts is required for an analysis of whether the picnic at which the injury occurred was sufficiently work-related to make the injury compensable. The facts are undisputed. The picnic was an annual affair, sponsored and paid for entirely by the firm. The organizing committee planned it on company time. It started at noon on a regular workday and lasted until late in the evening. Only the firm's legal and paralegal staff and their spouses were allowed to participate. No clients were present. The paralegals perceived the picnic as one of their job benefits. Attendance was not compulsory, but people were encouraged to attend. If those eligible to attend did not, they were expected to be at work that afternoon. Business was discussed only on an informal and casual basis. Some humorous or "fun" awards were made by the firm to those who participated in athletic events in the afternoon. Claimant was injured at the picnic between 6:30 and 7:00 p.m.

We address the issue of whether "the relationship between the injury and the employment [is] sufficient that the injury should be compensable." *Rogers v. SAIF,* 289 Or 633, 642, 616 P2d 485 (1980). We cited with approval Larson's tests in *Richmond v. SAIF,* 58 Or App 354, 357, 648 P2d 370, *rev den* 293 Or 634 (1982):

> "Recreational or social activities are within the course of employment when
>
> "(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
>
> "(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
>
> "(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life." 1A Larson, *Workmen's Compensation Law,* 5-52, § 22.00 (1985).[3]

The three tests are stated in the disjunctive. If claimant's attendance at the picnic satisfies any one of them, it would be within the course of her employment. She concedes that Larson's first test is not met, because the picnic occurred off the firm's premises.

The second test involves the extent to which an employer requires participation or makes the activity part of the services of an employe. We find Larson's analysis helpful:

> "When the degree of employer involvement descends from compulsion to mere sponsorship or encouragement, the questions become closer, and it becomes necessary to consult a series of tests bearing on work-connection. The most prolific illustrations of this problem are company picnics and office parties. Among the questions to be asked are: Did the employer in fact sponsor the event? To what extent was attendance really voluntary? Was there some degree of encouragement to attend in such factors as taking a record of attendance, paying for the time spent, requiring the employee to work if he did not attend, or maintaining a known custom

---

[3] In *Richmond v. SAIF, supra,* we cited the 1979 edition of Larson's treatise. The tests set forth in the 1985 edition are identical to those in the 1979 edition. *See* 1A Larson, Workmen's Compensation Law, 5-71, § 22.200 (1979).

of attending? Did the employer finance the occasion to a substantial extent? Did the employees regard it as an employment benefit to which they were entitled as a right? Did the employer benefit from the event, not merely in a vague way through better morale and good will, but through such tangible advantages as having an opportunity to make speeches and awards?" 1A Larson, *supra,* 5-110, § 22.23 (1985).

The law firm sponsored the picnic and allowed it to be organized on company time. Although attendance was voluntary, the firm did provide encouragement to attend by requiring staff members to work if they did not attend and by paying those who did attend. The firm financed the picnic in its entirety, including box lunches, barbecue dinners and cocktails. The paralegal staff regarded the picnic as one of their employment benefits. Although the firm presumably derived intangible benefits from the picnic through better morale among its employes, we cannot say that it received any more tangible benefits.[4] Nevertheless, consideration of all of the factors that Larson lists leads us to conclude that the picnic was an "activity within the orbit of employment."

■ Employer's insurer argues that, because the injury occurred between 6:30 and 7:00 p.m. and because the normal workday at the firm ended at 5:00 p.m., the injury occurred *after* any work-connection had terminated. We reject that argument. We hold that claimant's injury arose out of and was within her course of employment under ORS 656.005(8)(a).

■ ■ Finally, we address claimant's contention that the Board erred in awarding her interim compensation only from the time of the filing of her written claim in 1980 until its late denial, rather than calculating the award from the time when she notified Kreft and Lilly of her injury. Because we hold that claimant's notice to them was notice to employer, interim compensation should have begun at that time. Claimant is not entitled to interim compensation unless she "left work as that phrase is used in ORS 656.210(3)." *Bono v. SAIF,* 298 Or 405, 410, 692 P2d 606 (1984). The record indicates that claimant did not work the two work days immediately after the injury, but it is otherwise unclear whether she missed work before

---

[4] We note that under Larson's third test, the picnic does not fall within the course of employment, because the firm gained no benefit from the picnic other than boosting employe morale.

denial of her claim. We therefore remand to the Board for determination of interim compensation owed to claimant.

Reversed and remanded to the Workers' Compensation Board with instructions to accept the claim and for determination of compensation.