**STATE of Delaware, Employer Below, Appellant,**

v.

**Charles DALTON, Employee Below, Appellee.**

**No. 55, 2005.**

Supreme Court of Delaware.

Submitted: June 15, 2005.
Decided: July 11, 2005.

---

Dennis J. Menton and Timothy S. Martin, Tybout, Redfearn & Pell, Wilmington, DE, for appellant.

Thomas J. Roman and Jonathan B. O'Neill, Kimmel, Carter, Roman & Peltz, Bear, DE, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

This is an appeal from a final judgment entered by the Superior Court. The employer-appellant, the State of Delaware ("State"), appealed a decision of the Industrial Accident Board's ("IAB") finding that the employee-appellee, Charles J. Dalton, Jr., of the Delaware State Police, was injured during the course and scope of his employment and that the injury was, therefore, compensable under the Workers' Compensation Statute. The Superior Court affirmed the decision of the IAB.

The State has raised three issues in this direct appeal. First, the State contends that the Superior Court erred by making independent findings of fact that were beyond the scope of the IAB's factual determinations. Second, the State argues that after the Superior Court allegedly made its own factual findings, it reached a conclusion that was contrary to the substantial weight of the evidence. Third, the State alleges that the IAB erred, as a matter of law, by failing to articulate the applicable legal standard upon which its decision was based.

We have determined that the State's arguments are without merit. Accordingly, the judgment of the Superior Court is affirmed.

### Facts [1]

Dalton works as a state trooper for the State of Delaware. In July 2003, Dalton's supervisor sent a message through the State Police e-mail system asking troopers to volunteer to play in a charity softball game against volunteers from the New Castle County Police Department. Dalton volunteered and was chosen to play in the game, which took place on August 30, 2003. During the game, Dalton severely broke his wrist. He was totally disabled from his police duties from August 30, 2003 until November 2003, and incurred medical expenses to treat the injury.

The police charity softball game is an annual event organized by the Town of Middletown and played at Silver Lake Elementary School, which is owned and maintained by the State. Participation in the event by state troopers was approved seven years ago by high-ranking State Police personnel. The State Police provide uniforms for the state troopers who play in the game, and the officers provide the rest of their equipment. The game takes place on a weekend and involves only state troopers who are not on duty.

Six State Police officers testified during the IAB hearing on August 8, 2004. All agreed that participation in charity events such as the softball game is part of the job of a state trooper. The officers further agreed that the State Police receive a benefit from participation, namely, that charity work presents a positive image of police officers to the community. They testified that it is vitally important that the public view state troopers positively, so that they will be willing to assist police efforts to prevent crime. In recognition of this benefit, the State Police maintain a credit system to govern trooper rank advancement, and significant credits are awarded for charitable work.

The State does not contest the existence of the injury to Dalton or the bills associated with it. Instead, the State argues that the injury did not occur during the course and scope of Dalton's employment, and therefore is not compensable. The IAB disagreed, finding the fact that Dalton was asked to participate by his superior officer,

---

1. These facts are taken from the Superior Court's decision.

combined with the importance the State Police placed on charitable work, drew the softball game into the scope of Dalton's employment. The IAB's decision to award Dalton disability benefits was affirmed by the Superior Court.

### IAB's Decision

Dalton's burden of proof was to establish that his injury arose out of the course and scope of his employment with the State.[2] Since Dalton was not injured on his employer's premises, he was required to establish that he was injured "in or about the employer's business where the employee's services require[d] the employee's presence as part of such service."[3] In granting Dalton's petition, the IAB stated that "based on the factual circumstances viewed in totality and giving liberal construction to the Workers' Compensation Act, the Board finds that [Dalton] has met his burden of proof in this matter."

The IAB found that Dalton was "in or about the employer's business" when he was injured because: Dalton's "actions were taken in good faith to further his employer's interests"; Dalton's "duties as a state trooper, as reflected in the testimony of all witnesses, extended to representation at charity and community events"; Dalton's "participation shed a positive community light on the State Police and may have acted to deter crimes in the area and reflect well on the State Police's services"; the softball team was "comprised exclusively of fellow state troopers"; "participation in this event was sanctioned by State Police command and was believed to benefit the State Police and their image in

the community"; and Dalton "never sought to gain personally from his participation as he did not file for a recognition of community service for his personnel file."

### Standard of Review

The standard of review for an appeal of a decision from the IAB is well-established. In an appeal from the IAB, the function of both this Court and the Superior Court "is to determine only whether or not there was substantial evidence to support the findings of the Board. If there was, these findings must be affirmed."[4] This Court has noted that substantial evidence is more than a mere scintilla, but less than a preponderance of the evidence.[5] When reviewing appeals from the IAB, neither the Superior Court nor this Court is the trier of fact and neither tribunal has authority to weigh evidence, determine the credibility of witnesses or make independent factual findings.[6]

### Superior Court Made No Factual Findings

The State contends that the Superior Court made three independent factual findings that were not originally made by the IAB and that those facts were incorrectly applied to the substantial evidence standard. Those alleged independent factual findings are: 1) "the State created a promotional system that 'effectively' required attendance at charity events"; 2) "that 'a trooper' would reasonably believe that he was acting on behalf of the State when he responded to a request from a

**2.** See Histed v. E.I. DuPont de Nemours & Co., 621 A.2d 340, 343 (Del.1993).

**3.** Del.Code Ann. tit. 19, § 2301(15)a.

**4.** General Motors Corp. v. Freeman, 164 A.2d 686, 689 (Del.1960).

**5.** Olney v. Cooch, 425 A.2d 610, 614 (Del. 1981).

**6.** Johnson v. Chrysler Corp., 213 A.2d 64, 66 (Del.1965).

senior officer to 'volunteer' for a charitable event"; and 3) "that 'goodwill' police participation in charitable events was 'institutionally' recognized and 'actively' promoted by the State."

This argument is without merit because the record reflects that the IAB did make these three contested factual findings. Those findings are set forth by the IAB in its Decision on Petition to Determine Compensation Due, under the section entitled "Findings of Fact and Conclusions of Law." Accordingly, all three of those factual findings were properly before the Superior Court for review on appeal.

The IAB found that Dalton's duties as a trooper, "as reflected in the testimony of all witnesses, extended to representation at charity and community events." In the same section of its decision, the IAB made a factual finding that Dalton indeed "went about the State's business by his participation" in the softball charity game and that by "participating in the softball game, [Dalton] intended to further the interests of the State." The IAB accepted, as credible, testimony that Dalton's "participation shed a positive community light on the State Police and may have acted to deter crimes in the area and reflect well on the State Police's services." The IAB also found that the Delaware State Police sanctioned participation in the charity game.

### Conclusion Supported By Substantial Evidence

 The State next contends that the IAB's decision is not supported by substantial evidence. The determination as to whether a given activity is within a scope of employment is a conclusion of law based on a fact-specific analysis. In ascertaining whether Dalton's injury occurred during a non-sponsored recreational activity that was within the scope of his employment, the Superior Court considered the three factors set forth in *Larson's* treatise on Workers' Compensation Law:

(1) it occurs on the premises during a lunch or recreation period as a regular incident of the employment; or (2) the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or (3) the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.[7]

We hold that the Superior Court correctly decided to apply the non-sponsored recreational activity factors set forth in *Larson's* treatise because the softball game was not sponsored by the State Police.

The purpose of applying the *Larson* factors is to determine whether a recreational activity that is *not sponsored* by an employer is, nevertheless, within the course and scope of employment.[8] The State argues that the first factor set forth in the *Larson* treatise is dispositive because the softball game did not take place at a State Police facility. In support of this argument, the State relies upon the *Richmond*[9] case from Oregon for the proposition that the location and timing of the activity is outcome determinative. However, the *Richmond* case is neither a binding precedent in this jurisdiction nor does it

---

7. 2 Arthur Larson and Lex Larson, *Larson's Workers' Compensation Law,* ch. 22 (LEXIS Publishing 2001) § 22.01.

8. *Id.*

9. *Richmond v. State Accident Ins. Fund Corp.,* 58 Or.App. 354, 648 P.2d 370 (1982), *superseded by statute as stated in Roberts v. SAIF,* 196 Or.App. 414, 102 P.3d 752, 754 (2004).

remain good law, as it has been superseded by statute. Moreover, the *Larson* treatise expressly recognizes that a compensable injury may occur during a non-sponsored recreational activity that does not take place on the employer's premises.

Most important, the express terms of the factors set forth in *Larson's* treatise for determining the compensability of a non-sponsored recreational activity are stated in the disjunctive. Consequently, only one of the factors must be satisfied to support a finding that an injury is compensable.[10] However, the broken wrist that Dalton sustained in the softball game comports with both the second and third factors of the non-sponsored recreational activity factors set forth in the *Larson* treatise.

Since two of the *Larson* factors were supported by substantial evidence, the Superior Court had independent alternative factual bases for affirming the IAB's determinations that Dalton had suffered a compensable work-related injury. The Superior Court properly affirmed the IAB's determination that the State Police have brought charitable events such as this one into "the orbit of employment" for troopers, within the meaning of the second *Larson* factor, by soliciting volunteers through requests from superior officers, and by creating a promotion system that effectively requires attendance at charity events. With regard to the third *Larson* factor, benefit, the record supports the Superior Court's conclusion that there was substantial evidence to support the IAB's determination that the State derives a benefit from participation by state troopers in such events.

### IAB Articulated Applicable Legal Standard

■ The State's third argument is that the IAB did not set forth the applicable legal standard upon which its decision was based. That argument is contradicted by the record. The IAB explicitly stated that it was evaluating Dalton's claim under the Workers' Compensation Act,[11] and that it resolved the claim under the applicable "totality of the circumstances" test.[12] The record reflects that the IAB supported its conclusion that Dalton had sustained a work-related injury with specific factual findings and stated that "[b]ased on the factual circumstances viewed in totality and giving liberal construction to the Workers' Compensation Act, the Board finds Claimant has met his burden of proof in this matter." The analysis in the IAB's decision supports the Superior Court's conclusion that the IAB was relying on the factors set forth in *Larson's* treatise for determining whether a non-sponsored recreational activity was with the course of employment. We agree.

### Conclusion

The judgment of the Superior Court is affirmed.

10. 2 Arthur Larson and Lex Larson, *Larson's Workers' Compensation Law*, ch. 22 (LEXIS Publishing 2001) § 22.01.

11. Del.Code Ann. tit. 19, § 2304 (2005); Del. Code Ann. tit. 19, § 2301(15)a (2005).

12. *See Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 345 (Del.1993).