# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARY JO TESTA-CARR, )
)
    Employee-Appellant, )
)
    v. )    C.A. No. N23A-04-004 CEB
)
SALLIE MAE, )
)
    Employer-Appellee. )

Submitted: November 6, 2023
Decided: February 8, 2024

## MEMORANDUM OPINION

*Upon Appeal from the Industrial Accident Board,*
**AFFIRMED**

Joseph J. Rhoades, Esquire, Stephen T. Morrow, Esquire, Rhoades & Morrow LLC, Wilmington, Delaware. *Attorneys Employee-Appellant*.

H. Garrett Baker, Esquire, Elzufon, Austin & Mondell, P.A., Wilmington, Delaware. *Attorney for Employer-Appellee*.

**BUTLER, R.J.**

## INTRODUCTION

This is an appeal of a decision of the Industrial Accident Board ("Board"). The employee-appellant, Mary Jo Testa-Carr ("Claimant"), seeks review of a decision of the Board that found the Claimant was not injured during the course and scope of her employment with employer-appellee, Sallie Mae ("Employer") and that the injury was, therefore, not compensable under the Workers' Compensation Act.[1]

Upon consideration of the parties' submissions, for the reasons stated herein, the decision of the Board is **AFFIRMED**.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Accident

On March 21, 2022, Claimant was injured while delivering Meals on Wheels to an apartment in Newark. Claimant's full-time job was as a customer service representative for Sallie Mae.[2] While making the meal delivery, Claimant fell down a few stairs and sustained injuries to her head, neck, right shoulder, and right side.[3] At the time she was injured, Claimant was doing volunteer work through Sallie

---

[1] Testa-Carr's Opening Br.
[2] Board Decision at 2, 5.
[3] *Id.* at 5.

Mae's Employee Volunteer Program ("EVP").[4]  As a result of her injuries, Claimant alleges that she has incurred medical expenses and missed six weeks of work.

## B. Claimant's Petition to Determine Compensation Due

On July 1, 2022, Claimant filed a Petition to Determine Compensation Due with the Board.[5]  Claimant's Petition alleged that she is entitled to receive workers compensation benefits from Sallie Mae as a result of the injuries she sustained while delivering the food for Meals on Wheels.[6]  Sallie Mae opposed the Petition, arguing that Claimant was not injured by an accident arising out of and in the course and scope of employment.[7]

## C. The Board's Determination

On February 28, 2023, the Board held an evidentiary hearing.[8]  The Board ruled in favor of Sallie Mae.[9]  In denying the petition, the Board stated that "[g]iving liberal construction to the Workers' Compensation Act, the Board balanced the "*Larson* factors" under a totality of the circumstances standard."[10]  The Board held that "having found against Claimant on all three of the *Larson* factors, the Board

---

[4] *Id.* at 2, 4.
[5] *Id.* at 2.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 1.
[9] *Id.* at 34.
[10] *Id.* at 33.  *See* 2 Arthur Larson and Lex Larson, *Larson Workers' Compensation Law,* ch. 22 (LEXIS Publishing 2021) § 22.01.

concludes that she has failed to meet her burden to show that the March 21, 2022 accident and injury occurred in the course and scope of her employment with Sallie Mae."[11]

### D. Appeal to Superior Court

On April 26, 2023, Claimant appealed the Board's decision to this Court.[12] On appeal, Claimant asserts that the Board's determination that Claimant was not injured in the course and scope of her employment was not based on substantive evidence and constituted legal error.[13]

## STANDARD OF REVIEW

Review of a Board decision "is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[14] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15] Substantial evidence is "more than a scintilla, but less than a

---

[11] *Id.*

[12] Testa-Carr Notice of Appeal, Trans. ID. 69891291 (Apr. 26, 2023).

[13] Testa-Carr Notice of Appeal, at 2.

[14] *Sheppard v. Allen Family Foods*, 279 A.3d 816, 826 (Del. 2022) (internal citations omitted).

[15] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (internal quotation marks and citations omitted).

preponderance of the evidence."[16]  The Board's findings of substantial evidence "is a low standard to affirm and a high standard to overturn."[17]  "Weighing the evidence, determining the credibility of witnesses, and resolving any conflicts in the testimony are functions reserved exclusively to the Board."[18]  "Only when there is no satisfactory proof to support a factual finding of the Board may the Superior Court … overturn that finding."[19]

## ANALYSIS

The Workers' Compensation Act (the "Act") provides that an employee will be compensated "for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence."[20]  For an injury to be compensable under the Act, the injury must be "caused in a time and place where it would be reasonable for the employee to be under the circumstances" and "there must be a reasonable causal connection between the injury and the employment."[21] The Act states that personal injury sustained by accident arising out of and in the course of employment:

---

[16] *Id*.

[17] *Hanson v. Del. State Pub. Integrity Comm'n*, 2012 WL 3860732, at *7. (Del. Super. Aug. 30, 2012).

[18] *Noel-Liszkiewicz v. La-Z Boy*, 68 A.3d 188, 191 (Del. 2013).

[19] *Id.*

[20] 19 *Del C.* § 2304.

[21] *Rose v. Cadillac Fairview Shopping Center Properties (Delaware) Inc.*, 668 A.2d 782, 786 (Del. Super. 1995), *aff'd,* 676 A.2d 906 (1996).

[s]hall not cover an employee except while the employee is engaged in, on or about the premises where the employee's services are being performed, which are occupied by, or under the control of, the employer (the employee's presence being required by the nature of the employee's employment), or while the employee is engaged elsewhere in or about the employer's business where the employee's services require the employee's presence as a part of such service at the time of the injury…[22]

The Claimant argues that the Board erred in finding that she was not injured in the course and scope of her employment.[23] The determination regarding "whether a given activity is within a scope of employment is a conclusion of law based on a fact-specific analysis."[24] Since Claimant was not injured on her employer's premises, she was required to establish that she was injured "in or about the employer's business where the employee's services require[d] the employee's presence as part of such service."[25] In determining whether the injury the Claimant sustained while performing volunteer work occurred within the scope of her employment, the Board considered the three factors set forth in *Larson's* treatise on Workers' Compensation Law:

(1) It occurs on the premises during a lunch or recreation period as a regular incident of the employment; or (2) the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of employment; or (3) the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee

---

[22] 19 *Del. C.* § 2301(19)(a).
[23] Testa-Carr's Opening Br. 11.
[24] *State v. Dalton*, 878 A.2d 451, 455 (Del. 2005).
[25] 19 *Del. C.* § 2301(19)(a); *see* Board Decision.

health and morale that is common to all kinds of recreation and social life.[26]

The Claimant argues that the Board incorrectly applied the second and third *Larson* factors to her case.[27]  As a result, the Claimant contends that the Board's determination should be reversed because (1) by impliedly making the volunteer activity part of the services of an employee, Sallie Mae brought the volunteer activity within the orbit of employment; or (2) Sallie Mae derived a substantial direct benefit from the Volunteer Program.[28]

1. **The Board's Finding that the Claimant's Volunteer Activity Was Not Part of the Services of Her Employment is Supported by Substantial Evidence**

The Claimant argues that by making the volunteer activity part of the services of her employment, Sallie Mae brought the activity within the orbit of employment.[29] The Claimant asserts that Sallie Mae had strict rules as to when employees could participate and how the EVP was administered.[30]  Sallie Mae did this, according to

---

[26] *State v. Dalton,* 878 A.2d 451, 455 (Del. 2005); *see* 2 Arthur Larson and Lex Larson, *Larson's Workers' Compensation Law*, ch. 22 (LEXIS Publishing 2024) § 22.01.
[27] Testa-Carr's Opening Br. 14-16; Testa-Carr's Reply Br. 4-5.
[28] Testa-Carr's Opening Br.
[29] *Id.* at 16.
[30] Testa-Carr's Opening Br. 16-17; Testa-Carr's Reply Br. 5.

Claimant, to benefit from the program.[31]  As stated by the Claimant, "[u]ndoubtedly, the Volunteer Program was not instituted to benefit its employees, but to promote Sallie Mae in local communities."[32]

In response, Sallie Mae states that the purpose of the EVP is "extending PTO to an employee whose chosen volunteer activity occurs during the workday so that she can participate without having to use her personal leave time in order to do so."[33] Sallie Mae explains that "the employee has complete discretion over what volunteer activity she wishes to perform, if any" and the aim of the EVP is "not to place limitations on when volunteer activities may take place."[34] According to Sallie Mae, employees who wish to volunteer just need to get management approval to ensure that there is sufficient staffing during the employee's absence.[35]

The Board fairly concluded that volunteering through the EVP does not make volunteering part of the services of a Sallie Mae employee.[36] As stated by the Board:

> "Services" suggests an additional expectation of work being performed by the employee, and the Board was not convinced that there is any such additional expectation here. Instead, as already recognized, the evidence supports that there is no pressure from Sallie Mae on its employees to volunteer. An employee is not treated better or worse for volunteering or for not volunteering. Sallie Mae offers the benefit to its employees of paid time off to volunteer; however, under

---

[31] Testa-Carr's Opening Br. 16-17; Testa-Carr's Reply Br. 5.
[32] Testa-Carr's Opening Br. 17.
[33] Sallie Mae's Answering Br. 20.
[34] *Id*.
[35] *Id*.
[36] Board Decision at 29-30.

circumstances where taking such time is completely optional and voluntary, volunteerism is not found to be part of the services of the employee.[37]

Accordingly, the Court finds the Board's decision is supported by substantial evidence and free from legal error.

## 2. The Board's Finding that Sallie Mae Did Not Derive a Substantial Direct Benefit from the Volunteer Activity is Supported by Substantial Evidence

With regard to the third *Larson* factor, the Claimant argues that Sallie Mae derives a substantial direct benefit from the volunteer activity and that "[t]o find otherwise, is not supported by the evidence."[38]  In support of her argument, the Claimant professes that "Sallie Mae takes a myopic approach in its analysis related to the benefit it derives from the Volunteer Program" and, in doing so, "overlooks the entirety of the Volunteer Program."[39]  The Claimant insists that "the Volunteer Program benefits Sallie Mae in that improves the perception of Sallie Mae, not just in the local community, but also nationally, which is paramount to Sallie Mae in promoting its business by way of favorable advertising."[40]

---

[37] *Id.* at 30.
[38] Testa-Carr's Reply Br. 10.
[39] *Id.* at 6.
[40] *Id.* at 7.

The Board considered the Claimant's argument, acknowledging that Sallie Mae derives *some* benefit from its employees' volunteerism in general.[41] The Board noted various ways in which Sallie Mae benefits, including the improvement in existing employees' morale, the capability to attract new candidates, and the ability to highlight the aggregate number of volunteer hours its employees have performed in its corporate report, on social media, and on its website.[42] However, with regard to the Claimant's single volunteer activity for Meals on Wheels, the Board concluded that Claimant's outing did not reach the level of "substantial direct benefit" to Sallie Mae as required by the third *Larson* factor.[43] In reaching its conclusion, the Board reasoned that:

> Claimant's volunteerism was solo in nature, it was not a team activity or a company event that was promoted in the community by Sallie Mae. After hearing that there was an opportunity to do so, Claimant personally looked into delivering meals for Meals on Wheels utilizing her paid volunteer leave time from Sallie Mae. This was not a company event with other Sallie Mae workers all wearing clothing designed to be seen and to highlight Sallie Mae's involvement within the community. The Board found Ms. Waller credible that Claimant could have worn whatever she wanted with no direction to wear her Sallie Mae identification badge or to introduce herself to meal recipients as a Sallie Mae employee. In any case, Ms. Waller testified that she also has performed this kind of work for Meals on Wheels in the past, and most meals are left at the door with no person-to-person contact, particularly following the pandemic. Thus, even if Claimant were clad in Salle Mae gear, it is unlikely that she would have seen many, if any, of the meal recipients.

---

[41] Board Decision at 30.
[42] *Id*. at 30-31.
[43] *Id*. at 31.

Additionally, there was no indication of any promotion or publication of Claimant's particular volunteer activity, to include within employee meetings. However, even if Claimant's volunteer efforts were mentioned at a Sallie Mae team meeting, it would be for the purpose of recognizing existing Sallie Mae employees, not for recognizing or promoting Sallie Mae. Pictures of these volunteer events were shared but Claimant admitted that they were not required to be taken. All of this does not suggest that Sallie Mae was looking to get brand recognition or community accolades from this particular volunteer outing. Claimant personally decided to volunteer solo for a charitable organization and was able to make use of paid time off that Sallie Mae specifically provided for such endeavors. That Sallie Mae does not incentivize or reward workers in any way for their volunteer work also suggests that there is no direct or substantial benefit received by the company for these kinds of individualized outings, despite the fact that the statistics for volunteerism as a whole is referenced by Sallie Mae in certain media and literature.[44]

While the Board agreed that Sallie Mae received a secondary benefit from the EVP program, the Board disagreed that Claimant's volunteer activity for Meals on Wheels provided Sallie Mae with a "substantial" or a "direct" benefit.[45] The Court finds the Board's decision is supported by substantial evidence and free from legal error.

---

[44] *Id*. at 31-33.
[45] *Id*. at 33.

**CONCLUSION**

For the foregoing reasons, the decision of the Industrial Accident Board is **AFFIRMED**.

**IT IS SO ORDERED**.

/s/ Charles E. Butler
Charles E. Butler, Resident Judge