Argued and submitted November 3, 1997, reassigned February 3, 1998, decision of the Court of Appeals reversed; order of the Workers' Compensation Board reversed, and case remanded to Workers' Compensation Board for further proceedings September 28, 2000

In the Matter of the Compensation of
Kathleen A. Robinson, Claimant.

Kathleen A. ROBINSON,
*Petitioner on Review,*

*v.*

NABISCO, INC.,
*Respondent on Review.*

(WCB 93-02515; CA A85643; SC S43918)

11 P3d 1286

Robert Wollheim, of Welch, Bruun, Green & Wollheim, Portland, argued the cause and filed the petition for petitioner on review.

David L. Johnstone, of Vavrosky, Maccoll, Olson & Miller, Portland, argued the cause for respondent on review. With him on the briefs were Karli L. Olson, Portland, and Patric J. Doherty, Portland.

Kimberley Chaput, of Pozzi, Wilson, Atchison, LLP, Portland, filed a brief on behalf of *amici curiae* Oregon Workers' Compensation Attorneys and Oregon Trial Lawyers Association.

David L. Runner, Assistant Attorney General, Salem, filed a brief on behalf of *amici curiae* SAIF Corporation and Max J. Kuney Company.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

DURHAM, J.

---

** Fadeley, J., retired January 31, 1998, and did not participate in this decision. Graber, J., resigned March 31, 1998, and did not participate in this decision. Leeson and Riggs, JJ., did not participate in the consideration or decision in this case.

## DURHAM, J.

In this workers' compensation case, the issue is whether claimant is entitled to compensation for an injury suffered during a compelled medical examination (CME) under ORS 656.325(1)(a)[1] that her employer requested. The Workers' Compensation Board (Board) upheld employer's denial of compensation, and the Court of Appeals affirmed. *Robinson v. Nabisco, Inc.*, 143 Or App 59, 923 P2d 668 (1996). For the reasons stated below, we reverse the decision of the Court of Appeals and the order of the Board, and we remand the case to the Board for further proceedings.

The facts in this case are undisputed. In 1981, claimant sustained a compensable low back strain and leg radiculopathy, both on her right side, while working. Between 1981 and 1991, claimant aggravated her back condition several times. Claimant received permanent partial disability benefits and was treated at various times during that period. Claimant has not worked since April 1988. In April 1991, claimant and employer entered into a disputed claim settlement in which employer denied an upper-back injury as a new injury or occupational disease, but continued acceptance

---

[1] ORS 656.325(1) provides:

"(a) Any worker entitled to receive compensation under this chapter is required, if requested by the Director of the Department of Consumer and Business Services, the insurer or self-insured employer, to submit to a medical examination at a time reasonably convenient for the worker as may be provided by the rules of the director. However, no more than three examinations may be requested except after notification to and authorization by the director. If the worker refuses to submit to any such examination, or obstructs the same, the rights of the worker to compensation shall be suspended with the consent of the director until the examination has taken place, and no compensation shall be payable during or for account of such period. The provisions of this paragraph are subject to the limitations on medical examinations provided in ORS 656.268.

"(b) The insurer or self-insured employer shall pay the costs of the medical examination and related services which are reasonably necessary to allow the worker to submit to any examination requested under this section. As used in this subsection, 'related services' includes, but is not limited to, child care, travel, meals, lodging and an amount equivalent to the worker's net lost wages for the period during which the worker is absent if the worker does not receive benefits pursuant to ORS 656.210(4) during the period of absence. A claim for 'related services' described in this section shall be made in the manner prescribed by the director."

of claimant's other conditions as an aggravation of her original 1981 claim.

In June 1992, at employer's direction, claimant participated in a CME with Dr. Watson. During the examination, claimant complained of back pain. Watson directed claimant to raise her legs while lying on her back. Claimant stated that she could not raise her right leg. Watson then asked claimant to raise her left leg. When claimant raised her left leg, Watson moved it to a position beyond the point where claimant had moved it. Claimant felt immediate pain in the left low back and hip area. Medical tests indicated that Watson's maneuver had caused a new injury, specifically, a disc herniation on the left side. Doctors recommended surgical treatment for that injury.

Claimant sought workers' compensation for the treatment and surgery. Employer partially denied the claim, and claimant requested a hearing. In March 1993, claimant underwent surgery with another doctor to repair the disc herniation on the left side.

Before the administrative law judge (ALJ), claimant argued that her CME injury was compensable for either of two reasons, which we identify below. Her compensability arguments concern the application of ORS 656.005(7), which provides, in part:

> "(a)   A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, *arising out of and in the course of employment* requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, *subject to the following limitations*:

> "(A)   *No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition.*

> "(B)   If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing

cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

(Emphasis added.)

First, claimant contended that the CME injury was a new compensable injury and that the injury and her need for treatment arose out of and in the course of employment.[2] ORS 656.005(7)(a). Second, claimant contended that the CME injury was compensable as a consequence of a compensable injury under ORS 656.005(7)(a)(A).

After a hearing in May 1993, the ALJ upheld employer's partial denial of claimant's injury. The ALJ did not analyze the facts to determine whether claimant's CME injury arose out of and in the course of her employment. The ALJ determined that the CME injury was a new injury that was a "consequence" of claimant's original injury. Accordingly, the ALJ applied the major contributing cause standard that governs the compensability of consequential conditions. *See* ORS 656.005(7)(a)(A) (setting out that standard). The ALJ concluded that claimant's CME injury was not compensable, because the major contributing cause of that injury was Watson's conduct during the CME "or the combination of that injury with some degree of preexisting degenerative disc disease in the spine," not claimant's original 1981 injury.

On review, the Board adopted the ALJ's order. The Board agreed with the ALJ that claimant had not demonstrated that the 1981 compensable injury was the major contributing cause of the 1992 CME injury. As noted, the Court of Appeals affirmed. This court allowed claimant's petition for review.

---

[2] For that argument, claimant relied on the dissenting opinion of Judge Rossman in *Beardslee v. Diamond Wood Products*, 107 Or App 224, 227, 810 P2d 1352 (1991) (Rossman, J., dissenting). In that opinion, Judge Rossman examined the relationship between the claimant's work and his attendance at an employer-requested medical examination and concluded:

"* * * I would hold that the relationship between claimant's injury [incurred while traveling to the medical examination] and his employment is sufficiently close to render the injury compensable. Given employer's specific directive—a directive that was simply being carried out by claimant—the connection is too strong to ignore."

*Id.* at 228.

On review, petitioner contends that her CME injury is compensable under the following test stated by this court in *Andrews v. Tektronix, Inc.*, 323 Or 154, 162, 915 P2d 972 (1996):

> "In particular factual circumstances, various tests may prove helpful in measuring and conceptualizing the strength of the connection between the claimant's injury and employment. Still, the ultimate test is the same: Considering all the pertinent circumstances, are the temporal, spatial, circumstantial, and causal connections between the claimant's injury and employment sufficient to justify compensation, when sufficiency is evaluated in the light of the Act's policy of providing financial protection to workers who are injured in the course of employment, regardless of fault? Thus, when confronted with a test that purports to determine whether an injury sustained under a particular set of factual circumstances is compensable, we must ask, 'Is the test compatible with that formulation?' "

For the reasons that follow, we conclude that the connection between claimant's 1992 CME injury and her employment is sufficient to justify compensation. In addition, we conclude that the limitation in ORS 656.005(7)(a)(A), regarding a consequential condition, is inapplicable to this case. It follows from those conclusions that claimant's 1992 CME injury is a compensable injury.

■ Our task is to determine whether claimant's 1992 CME injury is a "compensable injury" under ORS 656.005(7)(a). Because we must construe the statute, the principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), guide our interpretation. We begin by considering the text and context of the statute. *Id.* at 610-11. We also consider, at the first level of analysis, prior case law from this court that interprets the same statutory wording, as well as other related statutes. *State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998).

The text of ORS 656.005(7)(a) describes a series of legal issues that govern the determination whether an accidental injury is compensable. Under that statute, the first question is whether the claim concerns an accidental injury that "aris[es] out of and in the course of employment * * *." If

the answer to that question is "yes," then the injury is compensable. ORS 656.005(7)(a)(A) and (B) state the bases, which the statute describes as "limitations," for determining the compensability of injuries and diseases denominated as "consequential" and "combined" conditions. Under the limitation that employer asserts is pertinent here, ORS 656.005(7)(a)(A), no injury or disease is "compensable as a consequence of a compensable injury" unless the compensable injury is the "major contributing cause" of the consequential condition. The phrase "compensable as a consequence of a compensable injury" indicates that the major contributing cause standard in that limitation applies only if the compensability determination depends on a showing that the injury or disease is a consequence of a compensable condition.

██ Following the analytical path that the text of ORS 656.005(7)(a) describes, we first inquire under that statute whether claimant's injury "aris[es] out of and in the course of" her employment. This court views the two prongs of that compensability test as two parts of a unitary "work-connection" inquiry that asks whether the relationship between the injury and the employment is sufficiently close that the injury should be compensable. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 526, 919 P2d 465 (1996); *see also* ORS 656.012(1)(c) (stating legislative finding that "those injuries that bear a sufficient relationship to employment * * * merit incorporation of their costs into the stream of commerce"). Thus, although the "arising out of" and "in the course of" prongs provide guidance, the unitary work-connection test does not supply a mechanical formula for determining whether an injury is compensable. We evaluate those factors in each case to determine whether the circumstances of a claimant's injuries are sufficiently connected to employment to be compensable. As this court stated in *Rogers v. SAIF*, 289 Or 633, 643, 616 P2d 485 (1980) (quoting *Allen v. SAIF*, 29 Or App 631, 633-34, 564 P2d 1086 (1977)):

" 'The statutory phrase "arising out of and in the course of employment" must be applied in each case so as to best effectuate the socio-economic purpose of the Worker's Compensation Act: the financial protection of the worker and his/her family from poverty due to injury incurred in production, regardless of fault, as an inherent cost of the product to the consumer. 1 Larson, Workmen's Compensation

Law § 2.20. Various concepts have arisen from attempts to rationalize that purpose, e.g., the going and coming rule, special errands, lunch hour cases, dual purpose trips, impedimenta of employment, horseplay, etc. Each is helpful for conceptualization and indexing, but there is no formula for decision. *Etchison v. SAIF*, 8 Or App 395, 398, 494 P2d 455 (1972). Rather, in each case, every pertinent factor must be considered as a part of the whole. It is the basic purpose of the Act which gives weight to particular facts and direction to the analysis of whether an injury arises out of and in the course of employment.' "

Claimant's injury must satisfy both prongs of the work-connection test to some degree; neither is dispositive. *Krushwitz*, 323 Or at 531. However, if many facts support one element of that test, fewer facts may support the other. *Redman Industries, Inc. v. Lang*, 326 Or 32, 35, 943 P2d 208 (1997).

■■ This court has explained that the "arising out of" prong of the compensability test in ORS 656.005(7)(a) requires that "some causal link exist" between the worker's injury and his or her employment. *Krushwitz*, 323 Or at 525-26. The "in the course of" employment prong requires that the time, place, and circumstances of the injury justify connecting the injury to the employment. *Id.* at 526.

■■ We begin our analysis of the work-connection test by applying the "arising out of" prong to claimant's CME injury. Claimant's injury arises out of employment if employment exposes her to some risk from which the injury originates. *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 601, 943 P2d 197 (1997).

ORS 656.325(1) entitles only three persons or entities to request a CME: the Director of the Department of Consumer and Business Services, an insurer, and a self-insured employer. Only one person is subject to the duty to submit to a CME: a worker entitled to receive compensation. The predicate for any CME is a work-related injury or disease that entitles the worker to receive compensation. Thus, it is a condition of the employment relationship—specifically, an injury or disease that occurs on the job—that gives rise to the

respective rights and duties of the parties described in ORS 656.325(1).

The injured worker must comply with a request for a CME or face suspension of the right to compensation. In no sense is the worker's participation in a CME a voluntary act carried out for personal reasons.

ORS 656.325(1) does not state explicitly the purpose of a CME but, in context, the purpose is clear. A CME is designed to provide the director, the self-insured employer, or the employer's insurer with information about claimant's condition from a doctor who has no fiduciary relationship with claimant, such as that of an attending physician. *See* ORS 656.005(12)(b) (defining "attending physician," in part, as "a doctor or physician who is primarily responsible for the treatment of a worker's compensable injury * * *"). An employer or insurer that requests a CME, as in this case, might use the examining doctor's information to protect the employer's legal position on the claim *vis-à-vis* the claimant, for example, by challenging the continuing compensability of the injury or disease, the extent of any resulting disability, or the nature of medical or psychological treatment that the claimant may require.

ORS 656.325(1)(b) obligates the employer's insurer or a self-insured employer to pay the costs of a CME. The costs include the claimant's net lost wages, unless he or she already receives temporary disability benefits under ORS 656.210(4), as well as expenses connected with the examination, including child care, travel, meals, and lodging.

The statute gives claimants no role in selecting the person who performs the CME but, by implication, leaves that matter to the person or entity that requests the examination. In the present case, claimant's employer requested the CME, and the employer's chosen medical examiner, Watson, controlled completely the examination procedures and the conditions that lead to claimant's injury.

The foregoing discussion of the characteristics of a CME, as described in ORS 656.325(1), demonstrates that some causal link does exist between claimant's injury during the CME and a risk connected to a condition of employment.

Claimant's workplace injury was the event that exposed her to the possibility that employer might request a CME. In requesting a CME, employer was exercising a statutory right granted to it because of its status as an employer of a worker with a compensable injury. Claimant faced a loss of her compensation if she failed to submit to the examination. Employer bore the responsibility of paying claimant's costs connected to the examination, including, as appropriate, net lost wage reimbursement. Finally, the purpose of the examination was to aid employer in monitoring its continuing exposure to liability for a work-related injury. The examination was not an activity in which claimant chose to participate to serve her personal interests unconnected to her work.

The characteristics of a CME, summarized above, show how the risk of an injury during a CME is one that is distinctly associated with employment. *Phil A. Livesley Co. v. Russ*, 296 Or 25, 29-30, 672 P2d 337 (1983). Indeed, the fact of employment and the occurrence of a workplace injury are the minimum circumstances that give rise to the use of a CME.

This court has stated that " '[i]njuries sustained by a worker in doing the appointed task are normally compensable, absent self-inflicted injury.' " *Wilson v. State Farm Ins.*, 326 Or 413, 418, 952 P2d 528 (1998) (quoting *Clark v. U.S. Plywood*, 288 Or 255, 261, 605 P2d 265 (1980)). ORS 656.325(1) obligated claimant, by reason of her status as an employee with a compensable injury, to carry out the "appointed task" that employer requested, *i.e.*, submission to a CME administered by Watson. Claimant's fulfillment of that statutory obligation exposed her to the risk that produced her injury. We are satisfied that a sufficient causal link exists between claimant's injury and a risk connected with employment to justify the conclusion that claimant's injury arose out of employment under ORS 656.005(7)(a).

■ We now turn to the "in the course of" factor of the work-connection test. As explained above, that factor " '[point[s] to the time, place and circumstance under which the accident takes place.' " *Rogers*, 289 Or at 639 (quoting *Larson v. State Ind. Acc. Com.*, 135 Or 137, 139-40, 295 P 195 (1931)). In *Fred Meyer*, this court stated:

"An injury occurs 'in the course of' employment if it takes place within the period of employment, at a place where a worker reasonably may be expected to be, and while the worker reasonably is fulfilling the duties of the employment or is doing something reasonably incidental to it."

325 Or at 598.

Here, the fact that employer exercised control over claimant at the time of her injury indicates that that injury occurred in the course of employment. As already discussed, employer chose the time, place, and circumstances of claimant's medical evaluation. Employer directed claimant to attend and controlled the circumstances of the CME that lead to claimant's injury. Claimant did not volunteer to participate. But for employer's directive, claimant would not have attended the examination. Claimant's entitlement to compensation for her costs in attending the CME also suggests that the CME injury occurred in the course of employment. *See Adams v. Compensation Department*, 249 Or 530, 532-33, 439 P2d 628 (1968) (fact that deceased worker was compensated for work that occurred during accident supported finding that accident arose in course and scope of employment).

Claimant participated in the CME for employer's benefit. Claimant acknowledges, as she must, that her attendance at the CME was motivated in part by a desire to avoid the suspension of her worker's compensation benefits, as described in ORS 656.325(1)(a). But her desire to avoid that penalty is comparable to the desire of all employees to avoid discipline or discharge by complying with their employer's lawful directives. The proper focus is whether the activity promotes some interest of the employer. As stated above, the CME in this case served the interest of employer by providing employer with pertinent information about claimant's compensable injury.

Applying the criteria identified in *Fred Meyer*, 325 Or at 598-99, we conclude that claimant's CME injury occurred in the course of employment. Because the circumstances of claimant's injury satisfy, at least to some degree, each prong of the test stated in ORS 656.005(7)(a), we also

conclude that the relationship between claimant's injury and employment is sufficient to justify compensation. *See Andrews*, 323 Or at 162 (stating analysis).

■          Because claimant's 1992 CME injury arose out of and in the course of employment, it was, for that reason, a compensable injury under ORS 656.005(7)(a). The Board should have determined, in the first instance, whether the CME injury occurred while claimant was engaged in a work-connected activity. The Board erred in assuming that the CME injury was compensable only as a consequence of a compensable condition. If, as here, the injury is compensable due to its connection to work, the limitation in ORS 656.005(7)(a)(A) is not applicable. ORS 656.005(7)(a) does not require claimant to meet the additional proof requirement that the 1981 injury was the major contributing cause of the 1992 CME injury.

In summary, we conclude that claimant's 1992 CME injury did arise out of and in the course of employment and is a compensable injury under ORS 656.005(7)(a). Because that injury is compensable due to its connection to employment, claimant need not prove that the 1981 compensable injury was the major contributing cause of the 1992 CME injury.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.