Argued and submitted November 6, 2000, affirmed August 8, 2001

In the Matter of the Compensation of
Craig A. Maddux, Claimant.

Craig A. MADDUX,
*Petitioner,*

*v.*

SAIF CORPORATION
and Pepsi-Cola Bottling,
*Respondents.*

98-08061; A109043

29 P3d 1171

Rex Q. Smith argued the cause and filed the brief for petitioner.

Jerome P. Larkin argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Deits, C. J., *vice* De Muniz, J., resigned.

## WOLLHEIM, J.

In this workers' compensation case, claimant petitions for review of an order on reconsideration of the Workers' Compensation Board that adhered to a prior order affirming SAIF's denial of claimant's knee claim. Claimant argues that the Board erred in holding that claimant did not meet his burden of proving that the right knee condition was compensable. The issue is whether substantial evidence supports the Board's finding that the medical evidence failed to prove that claimant injured his right knee at the same time that he injured his right ankle. We review for substantial evidence, ORS 183.482(8)(c), and affirm.

The following facts are not in dispute. In August 1997, claimant compensably injured his right ankle while walking backwards to help a truck driver guide a truck into a loading dock. While claimant was walking backwards, he stepped on a crack in the cement, rolled his right ankle, and fell. Soon after the accident, claimant had a physical examination and x-ray taken by his family physician, Dr. Tollerton, who diagnosed a fracture of the lateral malleolus of the right ankle. Tollerton dictates his chart notes in front of his patients 90 to 95 percent of the time.

The two workers' compensation forms claimant completed regarding his claim referred only to an injury to his right ankle. SAIF accepted a right ankle sprain and cortical avulsion of the right lateral malleolus in September 1997.[1] Claimant continued to see Tollerton several times throughout September and October. During a visit on September 2, 1997, Tollerton made a chart note stating, "[D]epending on how he holds his foot[,] it will hurt either at the knee or inside the cast."

Claimant was declared medically stationary in October 1997. In December 1997, claimant underwent a compelled medical examination (CME)[2] with Dr. Anderson. That

---

[1] *Stedman's Medical Dictionary*, 174 (26th ed 1995), defines "avulsion" as "[a] tearing away or forcible separation." A "lateral malleolus" is defined as "the process at the lateral side of the lower end of the fibula, forming the projection of the lateral part of the ankle[.]" *Id.* at 1057.

[2] *See Robinson v. Nabisco, Inc.*, 331 Or 178, 181, 11 P3d 1286 (2000).

same day claimant also underwent a physical capacities evaluation (PCE). During the PCE, claimant complained of knee pain. However, both Anderson and the physical capacities evaluator agreed that any knee impairment was related to a previous unrelated right leg injury. Tollerton concurred with Anderson's report.

A notice of closure issued in January 1998. Later in January 1998, claimant returned to Tollerton complaining of knee pain. Tollerton's chart note from that January 1998 appointment stated that the knee pain, which manifested itself only when claimant was walking, began shortly after his October 31, 1997, appointment with Tollerton. The chart note went on to state, "Knee pain, more than likely secondary to ankle injury. However, I feel that pt. should be seen by a specialist to determine this for sure." Tollerton referred claimant to Dr. Fax. Claimant told Fax that his knee had been bothering him since the initial August 1997 ankle injury. Fax diagnosed a medial meniscus tear and stated it was likely that claimant twisted his knee at the same time he twisted his ankle.

SAIF wrote a letter to Tollerton inquiring about claimant's knee injury. Specifically, the letter asked whether Tollerton believed that claimant's knee injury occured when the ankle was injured and why claimant did not complain about his knee until four months later. In response, Tollerton stated that he did not know. He also stated that "it is entirely possible that he might have injured [his knee] otherwise. Both [Fax] and I do feel that there is some difficulty in explaining why he waited four months to complain of his knee." Claimant was then referred by SAIF to Dr. Fuller, who noted knee effusion, which could be caused by a number of factors. Claimant also saw Dr. Rinehart, who concurred with Fuller's opinion, found no sign of a meniscus tear, and diagnosed a degenerative condition.

SAIF denied claimant's right knee claim in July 1998. At the hearing, claimant testified that his knee hurt from the time of his ankle injury. The administrative law judge (ALJ) concluded that there was no record of any knee complaints in the emergency room or in Tollerton's notes. Nor was there any reference to a knee injury in the workers'

compensation forms claimant completed soon after the August 1997 accident. Although the ALJ found claimant and his witness credible, he found the evidence insufficient to overcome the deficiencies in claimant's reporting of his knee problems.

Claimant sought review by the Board, arguing that the ALJ failed to consider Tollerton's September 2, 1997, chart note referring to knee pain and also Tollerton's January 20, 1998, chart notes stating that claimant's knee pain is most likely secondary to his August 1997 ankle injury. The Board adopted and affirmed the ALJ's opinion with supplementation. The Board concluded that Tollerton's change of opinion regarding the compensability of the right knee condition demonstrated that the attending physician no longer believed that the knee condition was compensable. In addition, the Board discounted the opinions of two physicians who initially supported compensability because the reports were based on an inaccurate history. No other physician stated that the knee condition was compensable. The Board concluded that claimant did not meet his burden of proof.

Claimant requested reconsideration, and the Board adhered to its original opinion. On judicial review, claimant continues to make the same argument: The Board failed to explain why it gave such weight to Tollerton's subsequent opinion that he doubted claimant's knee injury arose out of the August 1997 accident. Claimant argues that the uncontradicted evidence is that he complained of knee pain three weeks after the accident.

■ We review the Board's order for substantial evidence. *See Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990). "[T]he court must evaluate evidence against the finding as well as evidence supporting it to determine whether substantial evidence exists to support that finding. If a finding is reasonable in light of countervailing as well as supporting evidence, the finding is supported by substantial evidence." *Id.*

■ There is evidence of knee pain as noted by Tollerton a few weeks after the accident. In addition, Tollerton's initial observation in January 1998 was that claimant's knee injury

was secondary to his ankle injury. However, substantial evidence supports the Board's conclusion that claimant did not meet his burden of proof. Specifically, Tollerton's statement regarding the possible connection between claimant's knee and ankle injury was only an initial observation. His chart note goes on to state, "I feel that pt. should be seen by a *specialist to determine this for sure.*" (Emphasis added.) Later Tollerton wrote that he "doubted" any causal relationship between claimant's compensable ankle condition and the knee condition. Furthermore, although the September 2 chart note mentioned knee pain, Tollerton's subsequent chart notes show that claimant did not again complain of knee pain until January 1998. According to that chart note, claimant himself stated that his knee began to hurt shortly *after* his October 31, 1997, appointment with Tollerton. The Board examined those opinions both supporting and opposing the connection between the two injuries and concluded that claimant did not meet his burden of proving compensability.

There is substantial evidence in this record to support the Board's conclusion that claimant's injury did not cause the knee injury.

Affirmed.