Argued and submitted August 8, 2002, affirmed June 12, 2003

In the Matter of the Compensation of
Pamela L. Darling, Claimant.

Pamela L. DARLING,
*Petitioner,*

*v.*

JOHNSON CONTROLS BATTERY GROUP, INC.,
and Specialty Risk Services,
*Respondents.*

00-00719; A115889

70 P3d 894

James S. Coon argued the cause for petitioner. With him on the briefs was Swanson, Thomas & Coon.

Jerald P. Keene argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

**LINDER, J.**

Claimant filed a workers' compensation claim for a right shoulder injury. While investigating the claim, employer asked her to attend an insurer medical examination (IME)[1] pursuant to ORS 656.325(1)(a), in which she would be examined by an orthopedic surgeon and a neuropsychologist. Claimant refused to attend that exam. Employer subsequently denied her claim, and claimant requested a hearing to review that denial. Employer then twice sought to have claimant attend the IME that she had earlier refused to attend. Claimant refused both times. In response, employer moved to dismiss claimant's request for a hearing. The administrative law judge (ALJ) granted that motion, and the Workers' Compensation Board (board) affirmed. Claimant now seeks judicial review of the board's order. We affirm.

The pertinent facts are undisputed. Claimant began working for employer Johnson Controls Battery Group in July 1997, putting decals on batteries on its production line. In October 1999, she filed a workers' compensation claim for right shoulder pain as an occupational disease. She was diagnosed with a right shoulder strain and received medical treatment.

Claimant has a history of mental health problems including post-traumatic stress disorder, depression, anxiety, and chronic pain syndrome. While working for employer, she was taking psychiatric medication. During that same time period, claimant threatened to commit suicide and expressed suicidal thoughts to a coworker. Claimant was observed at work staring blankly at coworkers for up to 20

---

[1] The parties use different labels for the examination required by ORS 656.325(1)(a), as do the reported cases. *See, e.g., Robinson v. Nabisco, Inc.*, 331 Or 178, 181, 11 P3d 1286 (2000) (referring to exams under the statute as "compelled medical examinations"); *In re Smith*, 316 Or 55, 60, 848 P2d 612 (1993) (referring to same exams as "independent medical examinations"). We refer to them as "Insurer Medical Examinations" (IMEs) because that is the designation given to them by the director of the Department of Consumer and Business Services (DCBS), who has the statutory responsibility to promulgate rules implementing procedures for the exams. *See* OAR 436-010-0265.

minutes at a time. Additionally, claimant engaged in behavior that was disruptive to the work force. That behavior intensified during the fall of 1999, around the time that claimant filed her claim. Claimant's coworkers witnessed her displaying erratic mood swings, ranging from crying to hysterical laughter, even though there appeared to be no cause for such behavior. Claimant also made threats against her coworkers and was often seen talking to herself.

In response to claimant's workers' compensation claim, employer requested that claimant submit to an IME consisting of evaluations by a neuropsychologist as well as an orthopedic surgeon. The IME was scheduled for the first part of December, approximately two months after claimant provided employer with notice of her claim. About a week before the IME was to take place, claimant's attorney notified employer that claimant would not attend the IME if it included any form of psychological or psychiatric examination. The parties apparently reached an impasse on the point and, meanwhile, the employer was required to accept or deny the claim within 90 days pursuant to ORS 656.262(6)(a) (1999).[2] Employer denied it, and claimant requested a hearing to dispute that denial. A hearing date was set and, in the interim, employer rescheduled the IME. Claimant again refused to attend, indicating that she was "quite willing" to submit to an orthopedic examination but was not willing to submit to any examination by a neuropsychologist "without an order from the ALJ."

Claimant then filed with the ALJ a motion to quash the IME. Her position was that she would willingly submit to an orthopedic examination but not the psychiatric portion of the examination because, she maintained, such an examination would not produce evidence relevant to the hearing. In response, employer moved to dismiss claimant's request for a hearing on the ground that claimant's failure to attend the twice-scheduled IME had resulted in an unreasonable delay of the hearing. *See* OAR 438-006-0071(1).[3]

---

[2] The legislature later amended the statute so that an employer has only 60 days to issue the notice of acceptance or denial. Or Laws 2001, ch 865, § 7.

[3] In full, OAR 438-006-0071(1) provides:

"A request for hearing may be dismissed if an Administrative Law Judge finds that the party that requested the hearing has abandoned the request for

The ALJ concluded that the psychological examination was "reasonably calculated to lead to the discovery of admissible evidence" and therefore denied claimant's motion to quash in an interim order. The ALJ also declined to dismiss the hearing based on the delay caused by claimant's failure to attend the IME on either of the previously scheduled dates, deciding instead to give claimant one more opportunity to attend the next scheduled IME. The hearing was accordingly rescheduled.

Employer then notified claimant of a third date for conducting the IME. For a third time, claimant refused to attend because the IME included a psychiatric examination. Employer responded by filing another motion to dismiss claimant's request for a hearing, noting that "claimant has refused to attend the IME for over nine months." Relying on the ALJ's interim order, employer argued that, because claimant's objections to the IME had been litigated and resolved, she had "no legitimate legal basis to refuse to attend the reasonably scheduled IME. The delay her non-cooperation has caused must certainly be considered unjustified at this point." Claimant again responded that she was "anxious to cooperate in the orthopedic examination" but that she was unwilling to undergo a psychiatric examination because she did not believe it was relevant to her claim.

At a hearing on employer's motion to dismiss, claimant and employer advanced the same arguments that they had been making throughout the proceeding as to whether a psychological or psychiatric examination was necessary to evaluate and likely to produce evidence relevant to her claimed shoulder condition. Inconsistently with claimant's expressed continuing willingness to submit to an orthopedic examination, claimant further urged that ORS 656.325(1) did not give employer the authority to request her to submit to an IME once employer denied the claim.

The ALJ concluded that a psychiatric IME was likely to produce relevant medical evidence and that, under the circumstances, claimant's refusal to attend such an examination was "persuasive grounds for dismissal of her

hearing or has engaged in conduct that has resulted in an unjustified delay in the hearing of more than 60 days."

hearing request under OAR 438-006-0071(1)." By way of a footnote, the ALJ summarily rejected claimant's assertion that employer lacked authority to compel her attendance at any post-denial IME, noting that claimant had raised the argument only to preserve it for appeal and that the board's settled rulings were to the contrary.

Before the board, claimant renewed her argument that her refusal to attend the IME was not unreasonable because, as she put it, the IME "cannot lead to relevant medical information." Claimant also renewed and developed the argument that there is no statutory authority for an employer to require a worker to attend a post-denial IME. The board adopted and affirmed the ALJ's order and opinion. The board also supplemented the ALJ's order by specifically addressing and rejecting claimant's contention that employer had no authority to require her to submit to an IME once the employer denied the claim.

On judicial review, claimant abandons her arguments related to the relevance of the psychological examinations and instead relies exclusively on the argument that she developed before the board that ORS 656.325(1)(a) does not require a claimant to submit to a "post-denial" IME. According to claimant, the text and context of that statute make it clear that an employer has no authority to require a claimant to submit to an IME after the employer has denied the claimant's workers' compensation claim. Claimant therefore acknowledges that she was obligated to attend the IME that was scheduled before employer denied her claim and that she had no justification for not doing so.[4] But her position is that, when she refused to attend that predenial IME and employer thereafter denied her claim, employer lost the ability to reschedule the IME and thus had no authority to enforce claimant's obligation to attend it. Consequently, according to claimant, any delay of the hearing caused by her refusal to attend the rescheduled post-denial IME was justified and was not a basis for dismissal of the hearing.[5]

---

[4] Claimant expressly conceded at oral argument that she no longer asserts that she had any justification for refusing to attend the December 1999 IME.

[5] We treat the IME requested by employer as a single IME, rather than three separate ones, consistently with OAR 436-010-0265, which provides, in part, that, "[f]or purposes of determining the number of insurer required examinations, any examinations scheduled but not completed are not counted as a statutory IME."

■      Before addressing the merits of claimant's contentions, we begin with employer's argument that we need not resolve whether an employer is statutorily authorized to require a claimant to submit to an IME after an employer issues a denial. In that regard, employer points out that a dismissal of a hearing under OAR 438-006-0071(1) is discretionary—that is, a request for a hearing "may be dismissed" on grounds of unreasonable delay. Employer argues that, even if the ALJ and the board were wrong about an employer's authority to require a postdenial IME, the denial in this case issued only after claimant unjustifiably refused to attend a predenial IME. She then persisted in her unwillingness to attend the rescheduled IME, primarily on the ground that the psychiatric portion of it was irrelevant to her claim. Simultaneously, claimant expressed her willingness to attend the orthopedic portion of the exam, despite the fact that the denial had issued. She insisted on an adjudication of the issue by an ALJ, which led to an interim order concluding that she was obligated to attend the IME. Still, claimant refused to attend and forced a second litigation of the issue in resisting employer's second motion to dismiss the hearing.

From that procedural posture, employer argues that the ALJ and the board reasonably could have determined that claimant unjustifiably delayed the hearing based on her conduct and its effect on this proceeding, apart from the validity of claimant's objection to employer's authority to reschedule the IME once the denial issued. In particular, employer asserts that claimant could have attended the IME and objected to the admission of the examining physician reports or she could have lodged a complaint with the director of DCBS. Instead, she engaged in what employer describes as " 'self help' by stonewalling the requests, thereby stalling the entire proceeding that she, herself, had initiated."

We agree with employer that the ALJ's discretion might properly be exercised on that basis. The problem here, however, is that it was not. The ALJ, in dismissing the hearing, and the board, in affirming the ALJ's exercise of discretion, rested their decisions in significant part on the conclusion that employer had authority to require claimant to attend the IME and that the denied status of the claim did

not affect that authority. The correct approach, then, is for us to consider whether the ALJ and the board correctly understood the law in that regard. If they did, that is the end of the case. If they did not, the case would have to be remanded so that the ALJ can consider, in the first instance, whether to exercise discretion on the alternative basis urged by employer. *See Ring v. Paper Distribution Services*, 90 Or App 148, 150, 750 P2d 1205 (1988) (where claimant was not receiving any benefits, dismissal of hearing under rule pertaining to suspension of benefits for noncooperation with an IME was improper; case remanded for exercise of discretion whether to dismiss under rule permitting dismissal for unreasonably delaying hearing). We therefore turn to the legal question of whether an employer is statutorily authorized to require a claimant to attend an IME after the employer has issued a denial of the claim.[6]

■      We begin our analysis with the text of ORS 656.325(1)(a). *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). That statute provides, in relevant part:

"Any worker entitled to receive compensation under this chapter is required, if requested by the Director of the Department of Consumer and Business Services, the insurer or self-insured employer, to submit to a medical examination at a time reasonably convenient for the worker as may be provided by the rules of the director."

ORS 656.325(1)(a). As the text expressly provides, the obligation to submit to an IME under the statute extends to any worker "entitled to receive compensation." That language is the flash point of the dispute. Claimant contends that only

_____

[6] Relying on *Tri-Met, Inc. v. Albrecht*, 308 Or 185, 777 P2d 959 (1989), employer argues that our review in this case should be for substantial evidence. The issue in *Tri-Met* was whether the particular conduct involved served to "obstruct" the hearing. The court concluded in that case that the issue was a fact question to be reviewed for substantial evidence. *Id.* at 189. Claimant urges that, likewise, the question of whether claimant's conduct in this case obstructed the hearing "unjustifiably" is a factual determination to be made on a case-by-case basis. That might be true in some instances. Here, however, both the ALJ and the board, in deciding whether claimant delayed with or without justification, considered the correctness of her objection to the IME on the ground that the employer lacked *statutory* authority to require claimant to attend a post-denial IME. That presents us with a legal question.

workers who qualify for and have a right to receive compensation at the time of the request are obligated to submit to an employer's request for an IME. A claimant whose claim has been denied does not fit that description, according to claimant, because such a worker has no right to receive compensation. Rather, as claimant puts it, a "worker whose claim has been denied is entitled to only one thing: The right to request a hearing to have that denial reversed."

The language of the statute, in and of itself, is straightforward. The term "entitled" is a word of common usage to which we attribute its ordinary meaning. *PGE*, 317 Or at 611. In this context, "entitle" means "to give a right or legal title to : qualify (one) for something." *Webster's Third New Int'l Dictionary* 758 (unabridged ed 1993). The term "compensation" is specifically defined by statute. It broadly includes "all benefits, including medical services, provided for a compensable injury to a subject worker * * * by an insurer or self insured employer pursuant to this chapter." ORS 656.005(8). From that much alone, two understandings about the literal language "worker entitled to receive compensation" quickly emerge: First, the statute's focus is on the worker's status as someone who has a *right* to receive benefits, not on the fact of actual receipt of benefits. Second, no particular form or kind of benefit is a prerequisite; any amount or type of benefit under chapter 656 will do.

■    Less straightforward is the question of when a worker is entitled to receive a benefit of some form under the workers' compensation scheme, because the benefits scheme is undeniably intricate and complex. But, as the parties agree, a worker's general "entitlement" to some form of benefits arises as soon as a worker files a claim and before the employer either accepts or denies the claim or there is a final determination of the claim's compensability.[7] The worker is entitled, for example, to "interim compensation" in the form of temporary disability benefits if the worker is not able to work while the claim is being processed. ORS 656.262(4)(a);

---

[7] As employer correctly points out, that statement is subject to one limitation: the worker filing the claim must be a "subject worker" as defined in ORS 656.027. If the worker's status as a subject worker is disputed, the worker has no entitlement to benefits until that status is resolved. *See* ORS 656.247(1); *Bell v. Hartman*, 289 Or 447, 452-53, 615 P2d 314 (1980).

*Jones v. Emanuel Hospital*, 280 Or 147, 151-52, 570 P2d 70
(1977); *Basmaci v. The Stanley Works*, 177 Or App 102, 105,
33 P3d 377 (2001); *Labor Ready, Inc. v. Mann*, 158 Or App
666, 669-70, 976 P2d 89, *modified on recons*, 160 Or App 576,
987 P2d 524, *rev den*, 329 Or 479 (1999).[8] Thus, after a
worker files a claim, but before the employer accepts or
denies the claim, the worker is "entitled to receive compen-
sation" for losses the worker incurs as a result of the injury.
Claimant does not dispute that conclusion nor does she dis-
pute that an employer therefore can compel a worker's sub-
mission to an IME pursuant to ORS 656.325(1)(a) during the
period of investigation before acceptance or denial of the
claim.

■ ■ Claimant believes, however, that the employer's
denial of a claim completely cuts off a claimant's entitlement
to receive benefits. That is not the legal consequence of a
denial, however. A denial of a claim relieves the employer
only of the present duty to pay most workers' compensation
benefits. *Armstrong v. Rogue Federal Credit Union*, 328 Or
154, 161, 969 P2d 382 (1998) (citing ORS 656.262(2)). Signif-
icantly, if the injury is later determined to be compensable in
the hearing and appeal process, the employer is liable for all
back benefits, along with penalties and attorney fees.
*See generally id.* (citing statutes). Necessarily, then, the
employer's denial does not extinguish the worker's *legal
entitlement* to receive benefits; it instead suspends the *actual
receipt* of most benefits and places the worker's entitlement
in dispute. The problem then is that, until a worker's chal-
lenge to the denial is resolved, we cannot know as a general
proposition whether the worker is entitled to those sus-
pended benefits. The answer is maybe yes, maybe no.

It may be, as the board has concluded, that ORS
656.325(1) simply expresses no policy that applies to this cir-
cumstance and that statute therefore is neither the source of
an employer's authority to require a claimant to undergo an
IME post-denial nor a limitation on that authority. Based on

---

[8] Under amendments to the benefit scheme that were not in place when this
claim arose, workers now are also entitled, subject to certain terms and conditions,
to be reimbursed, before the claim is accepted or denied, for medical expenses
incurred as a result of the injury. ORS 656.247(1).

that view of the statute, the board has looked to the general policy of fairness and substantial justice expressed in ORS 656.012 ("to provide a fair and just administrative system * * * that reduces litigation and eliminates the adversary nature of the compensation proceedings to the greatest extent practicable") and in ORS 656.283(7) (to conduct hearings "in any manner that will achieve substantial justice"). The board has concluded that, consistently with those policy directives, an ALJ may apply the board's dismissal rule where a worker unreasonably refuses to submit to a post-denial IME in frustration of the board's adopted policy "to promote the full and complete disclosure of all facts and opinion pertaining to the claim[.]" *Ronald C. Fuller*, 49 Van Natta 2067 (1997) (quoting OAR 438-007-0015(5)).

We need not decide if the board is correct in that regard. As we earlier noted, the provisions in the workers' compensation scheme providing benefits for workers at various stages of the processing of claims are intricate, to say the least. We do not purport to have examined all of the potentially relevant statutes and implementing regulations. It has been enough for us to discover that, notwithstanding a denial, a worker continues to be "entitled to receive compensation," albeit limited compensation.

■ One such entitlement to benefits is granted by ORS 656.325(1), the very statute that authorizes an IME. Under subsection (c), on requesting a worker to submit to an IME, an insurer (or self-insured employer) becomes obligated to pay not only the costs of the medical examination itself, but also any "related services" reasonably necessary to allow the worker to submit to the IME. Related services includes the worker's lost wages if the worker is not receiving temporary total disability benefits. ORS 656.325(1)(c).[9] Related services

---

[9] ORS 656.325(1)(c) provides:

"The insurer or self-insured employer shall pay the costs of the medical examination and related services which are reasonably necessary to allow the worker to submit to any examination requested under this section. As used in this subsection, 'related services' includes, but is not limited to, child care, travel, meals, lodging and an amount equivalent to the worker's net lost wages for the period during which the worker is absent if the worker does not receive benefits pursuant to ORS 656.210 (4) during the period of absence. A claim for 'related services' described in this section shall be made in the manner prescribed by the director."

also includes any costs of child care, travel, meals, and lodging, if a worker incurs such expenses. *Id.* By force of that provision alone, a worker is entitled at a minimum to receive benefits of those limited kinds, notwithstanding an employer's denial. And such benefits plainly satisfy the definition of compensation. *See* ORS 656.005(8).[10]

Other statutory benefits also may accrue notwithstanding a denial. For example, ORS 656.245(4)(b)(B) expressly provides that an insurer remains liable for medical services payments "even if the claim is denied" under specified circumstances in which a worker is required to receive treatment from a managed care organization. Those benefits, too, are benefits that a worker is "entitled to receive" before the denial is set aside, thus refuting claimant's assertion that, after a denial, a "worker whose claim has been denied is entitled to only one thing: The right to request a hearing to have the denial reversed." *A fortiori*, an employer has authority under the statute to require a worker to submit to an IME after the employer denies the claim, assuming that the other limitations imposed by the statute and by rule (such as the number of examinations and the manner of conducting the IME) are satisfied.[11]

Our conclusion that workers remain entitled to receive some benefits even after issuance of a denial is consistent with the administrative rules promulgated by the director of DCBS, who has the express statutory responsibility to

---

[10] The fact that our conclusion in that regard has a "tail wagging the dog" quality is not lost on us. But our conclusion is faithful to the plain text of the statute and the literal meaning of its terms. We are therefore bound by it, no matter whether the policy outcome is sensible or absurd. *See generally Young v. State of Oregon*, 161 Or App 32, 37-39, 983 P2d 1044, *rev den*, 329 Or 447 (1999). Moreover, our interpretation does not have the troubling outcome of yielding an absurd result. To the contrary, as employer urges, concluding that employers *cannot* require workers to submit to post-denial IMEs would upset the prevailing practice and understanding in workers' compensation litigation for the last two decades. *See Fuller*, 49 Van Natta at 2068-70 (discussing settled cases). As significantly, it could permit a worker to completely frustrate an employer's entitlement to an IME, as happened in this case.

[11] The benefits that we identify in our discussion are by way of example and not necessarily a complete listing. We have not undertaken to examine the entire intricate fabric of workers' compensation benefits to identify others that may apply during the period in which a claim is denied and the denial is being disputed.

implement ORS 656.325(1) through rulemaking. OAR 436-010-0265(1) states, in part:

> "The insurer may obtain three medical examinations of the worker by physicians of their choice for each opening of the claim. These examinations may be obtained prior to or after claim closure."

That rule is complemented by OAR 436-060-0095(3), which further provides:

> "A worker shall submit to medical examinations reasonably requested by the insurer or the Director. No more than three separate medical examinations may be requested by the insurer *during each open period of a claim*, except as provided under OAR 436-010."

(Emphasis added.) Thus, the director has interpreted the statute as authorizing IMEs throughout the open period of a claim, not just the period before denial and following acceptance. That understanding is further reflected in subsection (2) of the same rule, which states:

> "The Division will consider requests to authorize suspension of benefits on accepted claims, deferred claims and *on denied claims in which the worker has appealed the insurer's denial.*"

(Emphasis added.) At a minimum, that portion of the rule reflects the director's understanding that, even after a denial, there are benefits available to a worker that are subject to suspension and that the terminology "entitled to receive compensation" therefore encompasses the period in which a worker's claim is denied and the worker is challenging the denial.

To be sure, the term "entitled to receive compensation" may not be a delegative term that requires us formally to defer to the director's understanding. *See generally Adams v. PERB*, 180 Or App 59, 65, 42 P3d 911 (2002) (distinguishing delegative from inexact terms and describing deference owed to agency for interpretations of delegative terms only). But that does not mean that the director's rules pertaining to IMEs are not entitled to our respectful consideration. *See*

*1000 Friends of Oregon v. LCDC (Lane Co.)*, 305 Or 384, 389-91, 752 P2d 271 (1988) (fact that statute's terms are "delegative" in nature is just one of several bases on which some form of deference may be owed to agency). Here, the director's broad mandate to promulgate rules to provide for the administration, regulation, and enforcement of much of the workers' compensation scheme (ORS 656.726(4)) and her specific responsibility to adopt rules governing the IME process (ORS 656.325(1)) are a basis on which the director's rules are at least worthy of our respectful consideration. In all events, we have arrived independently at our conclusion that a worker whose claim is denied and who is challenging the denial remains a worker "entitled to receive compensation" within the statute's meaning. The fact that the director's rules reflect that same understanding has not been a factor in the analysis leading us to our conclusion so much as it provides us with added confidence in that conclusion.

One final argument made by claimant deserves response. Claimant asserts that, notwithstanding any contrary conclusion dictated by an examination of the actual text of ORS 656.325(1), we are bound by the Supreme Court's decision in *Robinson v. Nabisco, Inc.*, 331 Or 178, 11 P3d 1286 (2000), which claimant reads as holding that the authorization for an IME ceases once an employer has issued a denial. *Robinson*, however, involved a different issue entirely—*i.e.*, whether the injury suffered by a claimant during an IME relating to a partially accepted claim was sufficiently work connected to say that it "arose out of" the claimant's work and was therefore a compensable injury. In analyzing that issue, the court noted that, under ORS 656.325(1), "[o]nly one person is subject to the duty to submit to [an IME]: a worker entitled to receive compensation." *Id.* at 186. The court further observed that the implicit purpose of the statutory IME process was to provide the director, the self-insured employer, or the employer's insurer "with information about claimant's condition from a doctor who has no fiduciary relationship with claimant," which might then be used, in the case of an employer or insurer, "to protect the employer's legal position on the claim *vis-à-vis* the claimant." *Id.* at 187. As examples—and examples only—of how the

IME might be used to protect an employer's or insurer's position, the court identified "challenging the continuing compensability of the injury or disease, the extent of any resulting disability, or the nature of medical or psychological treatment that the claimant may require." *Id.*

Because the few examples listed by the court related to accepted claims,[12] claimant reasons that the Supreme Court interpreted the statute to preclude IMEs for denied claims. But *Robinson* contains no such holding. The issue before the court was different from the issue in this case; the court did not examine in any detail the text of ORS 656.325(1), nor did it examine benefits potentially available to a worker during the time that a claim is denied and the worker is pursuing a challenge to the denial. Speaking in broad terms, the court recognized the purpose of IMEs to be to protect an employer's legal position on the claim, a purpose that readily encompasses a denied claim that is being challenged via further review. The few examples that the court listed were not exclusive and were not selected for the purpose of analyzing the issue presented here. Under the circumstances, *Robinson* offers neither authority nor meaningful guidance on the issue that we must resolve.

■ In summary, we conclude that, under ORS 656.325(1), a worker "entitled to receive benefits" includes a worker whose claim has been denied and who is pursuing a challenge to the denial. Consequently, an employer remains able to require a worker to submit to an IME during such a time period on the terms otherwise imposed by statute and administrative rule. Because of that conclusion, we need not remand this case for the ALJ to determine in the first instance whether, even if the employer lacked authority to conduct the IME after issuing the denial, the hearing should be dismissed based on claimant's refusal to submit to the

---

[12] In light of the 2001 change reflected in ORS 656.247(1), the examples would no longer relate only to accepted claims. An employer now has an obligation before acceptance or denial to reimburse a worker for medical expenses. Presumably, a dispute over the amount of reimbursement owed might be ongoing even after a denial.

predenial IME that she concedes she was obligated to attend and the delay to the hearing caused by her ensuing conduct.

Affirmed.