Argued and submitted July 30, reversed November 26, 2003

In the Matter of the Compensation of
Rodney G. McAleny, Claimant.
Rodney G. McALENY,
*Petitioner,*

*v.*

SAIF CORPORATION
and Max J. Kuney Company,
*Respondents.*

95-09821; A117460

81 P3d 88

Brad Larson argued the cause and filed the briefs for petitioner.

David L. Runner argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Wollheim* and Schuman, Judges.

SCHUMAN, J.

* Wollheim, J., *vice* Kistler, J., resigned.

**SCHUMAN, J.**

In *Robinson v. Nabisco, Inc.*, 331 Or 178, 189-90, 11 P3d 1286 (2000), the Supreme Court held that when a claimant who sustained a work-related injury and subsequently, during an "insurer medical exam" (IME) conducted to evaluate that injury, suffered a second injury, that second injury arose out of and in the course of employment and therefore entitled the claimant to workers' compensation benefits.[1] In *Getz v. Wonder Bur*, 183 Or App 494, 502, 52 P3d 1097, *rev den*, 335 Or 104 (2002), this court reached the same conclusion regarding a "physical capacity evaluation" (PCE). The present case is another variation on the same theme: Does an injury occurring during a "medical arbiter exam" (MAE) arise out of and in the course of employment? The Workers' Compensation Board (board) concluded that it did not. We reverse.

The relevant underlying facts are undisputed. Claimant compensably injured his right knee in 1994. After corrective surgery in 1995, he was declared medically stationary, and his claim was closed. Based on the surgery and reduced range of motion, claimant received 18 percent scheduled permanent disability. He requested reconsideration on the ground that the award did not adequately compensate him. On June 26, 1995, the Director of the Department of Consumer and Business Services (director), pursuant to ORS 656.268(7) (1995), sent claimant a letter requiring him to attend an MAE and indicating that failure to attend without good cause would result in suspension of benefits.[2] At the

---

[1] In *Getz v. Wonder Bur*, 183 Or App 494, 497 n 1, 52 P3d 1097, *rev den*, 335 Or 104 (2002), we noted the divergent names and acronyms given to the exam referred to in ORS 656.325 and OAR 436-010-0265; we decided in that case to call the exam a CME, or "compelled medical exam," because that was the term the Supreme Court used in *Robinson*, 331 Or at 181. Thereafter, we decided to use the more neutral term "Insurer Medical Examinations" (IMEs) "because that is the designation given to them by the director of the Department of Consumer and Business Services (DCBS), who has the statutory responsibility to promulgate rules implementing procedures for the exams." *Darling v. Johnson Controls Battery Group*, 188 Or App 190, 192 n 1, 70 P3d 894 (2003).

[2] The date of the letter is significant because the director's authority to suspend benefits was created by amendments to ORS 656.268(7) that went into effect on June 7, 1995.

MAE, the examiner performed tests on claimant and concluded that claimant's range of motion was *greater* than what had been determined for claim closure. Accordingly, the examiner recommended a *reduction* in claimant's disability benefits. Somewhat ironically, in administering one of the tests that led him to his conclusion, the examiner hyperextended claimant's leg and caused a lateral meniscus tear—the injury that is the subject of this case.

Claimant appealed, seeking reinstatement of the original level of scheduled permanent disability (18 percent) and also compensation for the MAE-inflicted injury. The board reinstated the original 18 percent but concluded that the injury suffered at the MAE was not compensable. Employer apparently accepted the reinstatement to 18 percent, but claimant sought judicial review of the noncompensability conclusion. We affirmed without an opinion. *McAleny v. Max J. Kuney Co.*, 149 Or App 212, 942 P2d 302 (1997). Claimant sought Supreme Court review and, while the review was pending, the court decided in *Robinson* that an injury suffered during an IME arose out of and in the course of employment. The court remanded this case to the board for further proceedings in light of *Robinson*. *McAleny v. Max J. Kuney Co.*, 331 Or 596, 16 P3d 1154 (2001). On remand, the board reaffirmed its original denial, relying on its own decision in *Dennis M. Getz*, 53 Van Natta 375 (2001), and distinguishing that decision from *Robinson* on the ground that *Robinson* dealt with an IME while *Getz* dealt with a PCE. An MAE, the board held, was more like a PCE than an IME. Shortly thereafter, however, we reversed *Getz*, 183 Or App 494, thereby undercutting the board's decision in this case. The question now on judicial review, therefore, is whether, in light of *Robinson* and *Getz*, an injury that occurs during a MAE, like one occurring during an IME and a PCE, arises out of and in the course of employment and is, therefore, compensable.

Like the facts, the legal principles governing this case are not in dispute. ORS 656.005(7)(a)(A) and (B) provide that "an accidental injury * * * arising out of and in the course of employment" is "compensable," subject to "limitations" for so-called "consequential" injuries and "combined conditions." *Robinson*, 331 Or at 184-85, holds that if the

injury does, in fact, arise out of and in the course of employment, the injury is *per se* compensable notwithstanding the limitations. *Accord Getz*, 183 Or App at 497.

In determining whether an injury arises out of and in the course of employment, the court takes guidance from the overarching principle expressed as the following inquiry:

> "Considering all the pertinent circumstances, are the temporal, spatial, circumstantial, and causal connections between the claimant's injury and employment sufficient to justify compensation, when sufficiency is evaluated in light of the [Workers' Compensation] Act's policy of providing financial protection to workers who are injured in the course of employment, regardless of fault?"

*Andrews v. Tektronix, Inc.*, 323 Or 154, 162, 915 P2d 972 (1996). More concretely stated, this so-called "work-connection test" has two parts: first, the injury must "arise out of" the employment, which means that there must be some causal link "between the worker's injury and his or her employment," *Robinson*, 331 Or at 186; and second, the injury must occur "in the course of the employment," which means "that the time, place, and circumstances of the injury justify connecting the injury to the employment," *id.* (citing *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 526, 919 P2d 465 (1996)). "The proper focus [of the second part] is whether the activity promotes some interest of the employer." *Robinson*, 331 Or at 189. To qualify as compensable, the injury must meet both parts, but "if many facts support one element * * *, fewer facts may support the other." *Id.* at 186.

To apply the legal principles to the facts of this case, we must begin with a description of the MAE and its function. In essence, the MAE is a mechanism by which a claimant may object to the conditions and conclusions contained in the notice of claim closure, usually the last routine step in the sequence of claim processing events. At the time of claimant's injury and the closure of his claim, the MAE was authorized and described by ORS 656.286(7) (1993):

> "If the basis for objection to a notice of closure * * * is disagreement with the impairment used in rating of the worker's disability, the director shall refer the claims to a

medical arbiter appointed by the director. * * * The arbiter * * * shall be chosen from among a list of physicians qualified to be attending physicians * * * who were selected by the director in consultation with the Board of Medical Examiners and [the Workers' Compensation Management-Labor Advisory Committee]. The medical arbiter * * * may examine the worker and perform such tests as may be reasonable and necessary to establish the worker's impairment. The costs of examination and review by the medical arbiter * * * shall be paid by the insurer or self-insured employer."

After an MAE, the director may issue an order on reconsideration, which, in turn, may be appealed to the board. On judicial review of the board's decision, we review factual determinations for substantial evidence and legal issues for errors of law. ORS 656.298(7).

In light of the foregoing principles, we conclude that the injury sustained by claimant in the MAE arose out of and in the course of his employment. The similarities between this MAE, the IME in *Robinson*, and the PCE in *Getz* far outweigh any differences. Regarding the "arising out of" aspect of the work-connection test, we readily conclude that, like the injuries in those cases, this injury derived directly and obviously from claimant's employment. As the Supreme Court described the connection in *Robinson*:

"The predicate for [the medical exam where the injury occurred] is a work-related injury * * * that entitles the worker to receive compensation. Thus, it is a condition of the employment relationship—specifically, an injury * * * that occurs on the job—that gives rise to the respective rights and duties of the parties * * *."

331 Or at 186-87. Further, had claimant not complied with the request for the MAE, his benefits would have been suspended. *Cf. id.* at 187.

The second inquiry of the work-connection test—whether the injury arose "in the course of" employment—also yields an affirmative answer, albeit not as obviously as the first inquiry. Although the injury did not take place at claimant's primary workplace while he was "on the clock" and under the direct control of the employer, those facts do not

necessarily mean that the injury did not arise in the course of employment. *Getz*, 183 Or App at 501. As noted above, the test requires that the time, place, and circumstances of the injury *justify connecting the injury to the employment*, with a primary focus on whether the claimant's activity at the time of injury promotes some interest of the employer or reasonably relates to it. *Robinson*, 331 Or at 186, 189; *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 598, 943 P2d 197 (1997). Like the PCE in *Getz*, the MAE here occurred while claimant was on employer's payroll, at a location where the worker could reasonably be expected to be (the facility to which he had been sent by the director), while doing something incidental to the duties of his employment.

█         Further, as we indicated in discussing the first part of the work-connection test, participating in the MAE was not an act performed by claimant for personal reasons unconnected to his employment. *Robinson*, 331 Or at 188; *Getz*, 183 Or App at 500. The purpose of the MAE, like the IME in *Robinson*, is

> "to provide the director, the self-insured employer, or the employer's insurer with information about claimant's condition from a doctor who has no fiduciary relationship with claimant, such as that of an attending physician. * * * An employer or insurer that requests a [IME] * * * might use the examining doctor's information to protect the employer's legal position on the claim *vis-à-vis* the claimant, for example, by challenging * * * the extent of any resulting disability, or the nature of medical or psychological treatment that the claimant may require."

*Robinson*, 331 Or at 187. Indeed, in the present case, the medical arbiter did revise claimant's disability award in employer's favor, although that revision did not survive on appeal.

Finally, claimant's MAE, like an IME or a PCE, must be paid for by an employer's insurer or the employer itself if it is self-insured. ORS 656.268(7). We find it significant that the legislature, in creating the workers' compensation system, decided to assign the cost of the MAE to the employer's insurer or the self-insured employer and not to the claimant. That decision indicates a recognition that an

MAE, like an IME or a PCE, does not serve a claimant's personal interest unconnected to work but is instead "an integral part of the claim verification process." *Getz*, 183 Or at 501.

The injury that claimant sustained during the MAE, then, arose out of and in the course of his employment, as those terms have been construed in earlier cases. Claimant's claim is compensable under ORS 656.268 and the board erred in concluding otherwise.[3]

Reversed.

---

[3] Claimant also argues that the board's order denying him compensation, in combination with ORS 656.018 (workers' compensation is exclusive remedy for workplace injuries), deprives him of a remedy for injury, thereby violating Article I, section 10, of the Oregon Constitution. Our reversal of the board's denial obviates the need for us to decide whether claimant adequately raised that issue below and, if so, whether it has merit.